STATE OF NORTH CAROLINA v. CLYDE EDWARD SPENCER

No. COA07-522

(Filed 18 December 2007)

## 1. Larceny— sufficiency of evidence—testimony of coconspirators

The trial court did not err in a prosecution for breaking and entering, larceny, and other charges by denying defendant's motions to dismiss for insufficient evidence. The testimony of two indicted co-conspirators was sufficient to support defendant's convictions.

## 2. Larceny— county in which crime occurred—a matter of venue

The trial court did not err by denying defendant's motion to set aside a larceny conviction where the indictment alleged that the crime occurred in Cleveland County while the proof indicated that the crime occurred in Gaston County. The place for returning an indictment is a matter of venue, and the variance between the indictment and the proof is not material.

## 3. Appeal and Error— Rule 2—manifest injustice

Appellate Rule 2 was invoked to prevent manifest injustice and consider whether defendant could be convicted of both larceny and possession of the same stolen property.

## 4. Larceny— possession of stolen property and larceny—judgment arrested

Judgment was arrested on convictions for felonious possession of stolen property where defendant was also convicted of larceny of the same property.

## 5. Sentencing— prior record level—stipulation

Sufficient evidence existed to show that defendant stipulated to his prior record level pursuant to N.C.G.S. § 15A-1340.14(f)(1), and the trial court did not err by determining defendant to be a prior record level IV offender.

**6. Sentencing— habitual felon—clerical error**

While there was a clerical error in finding defendant to be a violent habitual felon, he was properly sentenced in the presumptive range and the error was not prejudicial.

**7. Appeal and Error— preservation of issues—assignment of error abandoned—lack of evidence**

An argument that defense counsel was ineffective because he failed to inform defendant about the possible maximum sentence was deemed abandoned where defendant did not present evidence tending to show that he was not fully informed.

Judge JACKSON concurs.

Appeal by defendant from judgments entered 16 November 2006 by Judge Karl Adkins in Cleveland County Superior Court. Heard in the Court of Appeals 15 November 2007.

*Attorney General Roy Cooper, by Special Deputy Attorney General E. Burke Haywood, for the State.*

*Richard E. Jester, for defendant-appellant.*

TYSON, Judge.

Clyde Spencer ("defendant") appeals from judgments entered after a jury found him to be guilty of breaking and entering, larceny after breaking and entering, and felonious possession of stolen property in file 06-CRS-053923 and felony larceny and felonious possession of stolen property in file 06-CRS-053924. Defendant pled guilty to attaining habitual felon status in file 06-CRS-4758. We find no error in part, arrest judgment and vacate in part, and remand for resentencing and correction of clerical error.

## I. Background

On 23 June 2006, Sidney Gary's ("Gary") and Lynn and Melanie Hayes' ("the Hayes") homes were broken into and several items were stolen. Eric Barnes ("Barnes"), a next door neighbor, notified Kings Mountain police officers after he had encountered a suspicious male asking to borrow his gas can. Barnes observed a different male walking in the rain, coming from the direction of the Hayes' home, wearing khaki shorts and no shirt. Shortly thereafter, the male "who [was] supposedly out of gas, crank[ed] his truck up." Barnes called the police and reported that there was a suspicious green Chevrolet truck

in the area. At approximately 8:30 p.m., Officer Taylor Myers ("Officer Myers") responded to the call. As Officer Myers proceeded to Crescent Hill Road, Officer Scott Bailey ("Officer Bailey") notified her that he had stopped the suspicious vehicle.

Subsequently, Officers Myers and Bailey received a second call stating an unknown subject, who was wearing khaki shorts and no shirt, was running through the yards of homes on Crescent Lane towards South Cansler Street. This area is less than a half of a mile from where Officer Bailey had stopped the suspicious vehicle. As Officer Myers proceeded toward that area, she saw Donald Bell ("Bell") standing outside in his yard. Bell advised Officer Myers a light in the Hayes' home was on, although the family was out of town. Bell also stated he had observed three suspicious subjects sitting in a green Chevrolet truck, stopped directly in front of the Hayes' home. Officer Myers and Bell went next door to investigate and discovered a broken window and a brick lying on the den floor. Officer Myers entered the Hayes' home and photographed each room.

Officer Bailey stopped the suspicious vehicle within a half block of the Hayes' home. Todd Bryan ("Bryan") and Judy Shinn ("Shinn") were the truck's only occupants. Bryan and Shinn both appeared to be under the influence of crack cocaine. After conducting a search of the vehicle, Officer Bailey recovered DVDs, CDs, a PlayStation, a jewelry box, a laptop computer, a green duffle bag, and a gas can. Officer Bailey ordered the truck towed to the police department where an inventory was taken of the vehicle's contents. (T 86, 108) Gary and the Hayes identified several items located in the truck as belonging to them.

Bryan and Shinn were arrested and taken into custody. At some point during the evening, Shinn stated to a police officer that they had left defendant behind at the scene. Bryan was charged with and pled guilty to two counts of possession of stolen property. Shinn was charged with and pled guilty to one count of possession of stolen property.

On 2 July 2006, Officer Kevin Putnam ("Officer Putnam") responded to a call regarding a break-in at the home of Amy Beam ("Beam") in Gastonia. Someone had broken the glass in her rear door, entered Beam's home, and stole several items including a purse, a checkbook, and her identification card. The vehicle involved in the break-in was identified as an older model white Chevrolet or GMC

truck. On 5 July 2006, Officer Putnam spotted the vehicle parked in a driveway. Defendant and another occupant were inside the vehicle. Defendant was arrested and taken into custody.

Bryan testified for the State pursuant to his plea agreement. Bryan stated he had met defendant in a drug rehabilitation program. In the last week of May 2006, defendant asked Bryan to give him a ride to his parent's home in Shelby. Bryan and defendant "ended up in Gastonia" where they began a two-week drug "binge." Bryan testified that during this "binge," he and defendant stole various items and traded the property for drugs. Bryan and defendant met Shinn at a drug house the day the crimes in question occurred.

On the evening of 23 June 2006, Bryan dropped defendant off in a Kings Mountain neighborhood, parked his truck up the street, and waited for defendant to return. Bryan testified it was understood that he would "drop[] [defendant] off, [defendant] would break into a house, [Bryan] would come pick him up and [they] would get the stuff, take it and sell it." While awaiting defendant's return, Bryan's truck ran out of gas. After searching for gas for thirty to forty-five minutes, Bryan saw defendant walking down the street at the same time a police officer was patrolling the area. Bryan entered his vehicle and attempted to leave the scene, but Officer Bailey initiated a stop. Bryan testified he did not see defendant put property in his truck and did not know how the Hayes' property ended up there. Bryan testified defendant was wearing khaki shorts and no shirt during the night the crimes in question occurred.

Bryan also testified while he and defendant were in jail, defendant asked if Bryan "would take [the] charges for him." Initially, Bryan agreed and wrote a statement confessing that he had broken into Gary's and the Hayes' homes. Bryan later recanted the earlier confession.

Shinn also testified for the State pursuant to her plea agreement. Shinn stated she had met Bryan at a friend's home and asked him to "give her a ride" in exchange for gas money. Bryan and Shinn drove to a store to meet defendant. Defendant had purchased a "crack rock" and "split it three ways." Bryan, Shinn, and defendant drove to a home on Ozark Avenue in Gaston County. Shinn testified Bryan and defendant entered the home and emerged with DVDs, a PlayStation, a camera and video games. Defendant stated the items belonged to him, and he had to take them to Kings Mountain.

The group then drove to Kings Mountain. Shinn testified Bryan took defendant to a home where he knocked on the door for approximately twenty minutes. Defendant walked around to the back of the home and tripped a security alarm. Bryan attempted to leave the area, but ran out of gas. Shinn testified she did not see defendant put property in Bryan's truck while it was parked in the Kings Mountain neighborhood.

Gary testified that he discovered his home had been broken into in the early morning hours of 23 June 2006. The perpetrators of the crime had gained access to his home through the window in his children's room. Gary also testified that he did not know Bryan, Shinn, or defendant and he had not given anyone permission to enter his home and remove his possessions.

Defendant entered a plea of not guilty to all charges. (T 4) In file 06-CRS-53923, the jury found him to be guilty of: (1) breaking and entering the Hayes' home; (2) larceny after breaking and entering the Hayes' home; and (3) felony possession of stolen property from the Hayes' home. In file 06-CRS-53924, the jury found defendant to be guilty of: (1) felonious larceny from Gary's home and (2) felonious possession of stolen property from Gary's home. Defendant pled guilty to attaining habitual felon status.

The trial court consolidated all counts on the individual indictments and entered one judgment on each indictment. In file 06-CRS-53923, defendant was sentenced to an active minimum term of 133 to a maximum of 169 months imprisonment. In file 06-CRS-53924, defendant was sentenced to an active minimum term of 107 to a maximum of 138 months imprisonment, to be served consecutively with the sentence above. Defendant appeals.

## II. Issues

Defendant argues the trial court erred by: (1) denying his motions to dismiss; (2) incorrectly calculating his prior record level; and (3) finding him to be a violent habitual felon. Defendant also argues he received ineffective assistance of counsel.

## III. Motions to Dismiss

Defendant argues the trial court erred by denying his motions to dismiss at the close of the State's evidence and again at the close of all the evidence. We disagree.

### A. Standard of Review

This Court has stated:

The standard for ruling on a motion to dismiss is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense. Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. In ruling on a motion to dismiss, the trial court must consider all of the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal.

*State v. Wood*, 174 N.C. App. 790, 795, 622 S.E.2d 120, 123 (2005) (internal citations and quotations omitted).

### B. Sufficiency of the Evidence

[1] Defendant argues the trial court erred by denying his motions to dismiss based on insufficiency of the evidence. Defendant's only argument pertaining to this assignment of error is "[t]he State provided only the testimony of indicted co-conspirators implicate [sic] [defendant] for the crimes in this case."

"It is well settled in North Carolina that uncorroborated accomplice testimony is sufficient to sustain a conviction." *State v. Wallace*, 104 N.C. App. 498, 503, 410 S.E.2d 226, 229 (1991), *disc. rev. denied*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 121 L. Ed. 2d 241 (1992). Bryan and Shinn testified consistently regarding defendant's participation in the crimes committed. This accomplice testimony is sufficient to support the denial of defendant's motions to dismiss. The trial court did not err by denying defendant's motions. *Wood*, 174 N.C. App. at 795, 622 S.E.2d at 123. This assignment of error is overruled.

### C. Bill of Indictment

[2] Defendant argues "there was no proof that one of the crimes occurred in Cleveland County." Defendant asserts his conviction of larceny in file 06-CRS-053924, must fail because the indictment alleged the crime occurred in Cleveland County, while the proof at trial indicated the crime actually occurred in Gaston County. We disagree.

N.C. Gen. Stat. § 15A-631 (2005) states, "the place for returning a presentment or indictment is a matter of venue and not jurisdiction." This Court has held "[q]uestions of venue . . . are waived by the failure to make a pretrial motion, even if the problem of venue arises from a variance between the indictment and the proof at trial." *State v. Brown*, 85 N.C. App. 583, 587-88, 355 S.E.2d 225, 229 (citations omitted), *disc. rev. denied*, 320 N.C. 172, 358 S.E.2d 57 (1987). Here, defendant failed to make a pretrial motion regarding venue. Defendant wavied any question of venue. *Id.*

Further, a variance between an indictment and the proof at trial is not always fatal. *State v. Furr*, 292 N.C. 711, 721, 235 S.E.2d 193, 200 (citations omitted), *cert. denied*, 434 U.S. 924, 54 L. Ed. 2d 281 (1977). "A variance regarding the place of the crime is not material where it is not descriptive of the offense, is not required to be proven as laid to show the court's jurisdiction, and does not mislead the defendant or expose him to double jeopardy." *Brown*, 85 N.C. App. at 588, 355 S.E.2d at 229 (citation omitted). Here, where defendant was charged with felony larceny in Cleveland County, and the State's proof of the offense tended to show it occurred in Gaston County, the variance is not material. This assignment of error is overruled.

## D. Convictions of Both Larceny and Possession of Stolen Property

**[3]** Defendant argues he cannot be convicted for both larceny and possession of the same stolen property. We agree.

Defendant failed to set out an assignment of error in the record on appeal pertaining to this argument. Defendant has raised this issue on appeal for the first time in his brief. Rule 10(a) of the North Carolina Rules of Appellate Procedure provides, in relevant part, "[e]xcept as otherwise provided herein, the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule. . . ." N.C.R. App. P. 10(a) (2008). Violation of the Rules of Appellate Procedure will subject an appeal to dismissal. *Steingress v. Steingress*, 350 N.C. 64, 65, 511 S.E.2d 298, 299 (1999).

In light of our Supreme Court's decision in *State v. Hart*, we must determine whether to invoke and apply Appellate Rule 2 despite defendant's appellate rules violation. 361 N.C. 309, 644 S.E.2d 201 (2007). The decision whether to invoke Appellate Rule 2 is discretionary and is to be limited to "rare" cases in which a fundamental

purpose of the appellate rules is at stake. *Id.* at 315-16, 644 S.E.2d at 205. Appellate Rule 2 has most consistently been invoked to prevent manifest injustice in criminal cases in which substantial rights of a defendant are affected. *Id.* at 316, 644 S.E.2d at 205. Under these facts, we find it appropriate to invoke Appellate Rule 2 and review the merits of defendant's argument.

**[4]** It is well established in North Carolina that "though a defendant may be indicted and tried on charges of larceny, receiving, and possession of the same property, he may be convicted of only one of those offenses." *State v. Andrews*, 306 N.C. 144, 148, 291 S.E.2d 581, 584 (citations and quotations omitted), *cert. denied*, 459 U.S. 946, 74 L. Ed. 2d 205 (1982); *see also State v. Perry*, 305 N.C. 225, 235, 287 S.E.2d 810, 816 (1982) ("Our review of the legislative history and case law background against which our possession statutes were enacted and our analysis of its internal provisions lead us to the conclusion that . . . the Legislature did not intend to punish an individual for larceny of property and the possession of the same property which he stole.").

In *State v. Dow*, this Court stated: "where judgment must be arrested upon one of two sentences of equal severity because of a double jeopardy violation, the sentence which appears later on the docket, or is second of two counts of a single indictment, or is the second of two indictments, will be stricken." 70 N.C. App. 82, 87, 318 S.E.2d 883, 887 (1984) (internal citation and quotion omitted). The trial court's judgment must be arrested in one of the two cases where a defendant has been convicted of both larceny and possession of the same stolen property. *Id.*

Applying these rules, we arrest the defendant's convictions of felonious possession of stolen property in files 06-CRS-053923 and 06-CRS-053924 and remand for resentencing in accordance with this opinion.

## IV. Prior Record Level

**[5]** Defendant argues the trial court erred in calculating his prior record level. We disagree.

N.C. Gen. Stat. § 15A-1340.14(f) (2005) provides:

A prior conviction shall be proved by any of the following methods:

(1) *Stipulation of the parties.*

(2) An original or copy of the court record of the prior conviction.

(3) A copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts.

(4) Any other method found by the court to be reliable.

(Emphasis supplied).

Here, defendant's prior record level was properly proven by stipulation. Included in the record on appeal is form AOC-CR-600 entitled "Prior Record Level For Felony Sentencing." In Section I, defendant was found to have accumulated eleven points for prior felony convictions and was classified as a prior record level IV. (R. 20) Section III is entitled "Stipulation" and states:

The prosecutor and defense counsel . . . *stipulate* to the accuracy of the information set out in Sections I. and IV. of this form, including the classification and points assigned to any out-of-state convictions and *agree with the defendant's prior record level* or prior conviction level as set out in Section II.

(Emphasis supplied). Both the assistant district attorney and defense counsel signed this stipulation.

Further, defense counsel failed to object to the following exchange between the assistant district attorney and the trial court:

Your Honor, the State would tender the [d]efendant as a Level 4 for sentencing purposes, exempting the convictions that have been used to indict the [d]efendant as a habitual felon. I've crossed those out on the worksheet *which [defense counsel] and [defendant] have reviewed.* . . . I've calculated and *defense counsel has stipulated* that his record Level is 4 with 11 prior conviction points, and we would submit [defendant] as a prior record Level 4 as a habitual felon.

(Emphasis supplied).

Sufficient evidence in the record tends to show defendant stipulated to his prior record level pursuant to N.C. Gen. Stat. § 15A-1340.14(f)(1). The trial court did not err by determining defendant to be a prior record level IV offender. This assignment of error is overruled.

## V. Judgment and Commitment Orders

[6] Defendant argues the trial court erred by finding defendant to be a violent habitual felon. The State acknowledges this clerical error. We agree.

Here, the two Judgment and Commitment orders erroneously indicate the trial court made "no written findings because the prison term imposed is: . . . for an adjudication as a violent habitual felon." The transcript indicates and the State concedes, this finding is incorrect. Based on the record, the trial court should have indicated defendant: (1) pled guilty to attaining habitual felon status and (2) was sentenced in the presumptive range. Because defendant was properly sentenced as an habitual felon, these clerical errors are not prejudicial. Upon remand, the trial court is to correct these clerical errors in judgments 06-CRS-053923 and 06-CRS-053924.

## VI. Ineffective Assistance of Counsel

[7] Defendant argues his trial counsel was ineffective because he failed to fully inform defendant of the possible maximum sentence he faced before trial. We dismiss this assignment of error.

Where defendant cites no authority or presents no argument pertaining to the assignment of error in his brief, it is deemed abandoned pursuant to N.C.R. App. 28(b)(6) (2008). Here, defendant presents no evidence tending to show he was not fully informed of the possible maximum sentence prior to trial. Defendant acknowledges "the Record on Appeal and transcript do not contain enough evidence for [defendant] to present a meritorious argument on this issue before this Court." This assignment of error is deemed abandoned and is dismissed. *Id.*

## VII. Conclusion

The trial court erred by convicting defendant for both larceny and felony possession of the same stolen property. We arrest judgment and vacate defendant's convictions and sentences for felony possession of stolen property in 06-CRS-053923 and 06-CRS-053924 and remand for resentencing. During remand, the trial court is to correct clerical errors regarding defendant's habitual felon status.

Defendant's prior record level was properly stipulated to by defendant pursuant to N.C. Gen. Stat. § 15A-1340.14(f). Defendant's assignment of error regarding ineffective assistance of counsel is deemed abandoned and dismissed pursuant to N.C.R. App.

P. 28(b)(6). Defendant's remaning convictions are undisturbed. We find no error in part, arrest and vacate judgment in part, and remand for resentencing and correction of clerical error in accordance with this opinion.

No Error in Part, Arrest and Vacate Judgment in Part, and Remanded.

Judge STROUD concurs.

Judge JACKSON concurs by separate opinion.

JACKSON, Judge, concurs by separate opinion.

Although I concur fully with the majority opinion, I write separately to express my opinion that while not all Appellate Rules violations warrant dismissal, neither do they all require a determination of whether to invoke Rule 2.

In *State v. Hart*, 361 N.C. 309, 644 S.E.2d 201 (2007), our Supreme Court reminded this Court that "every violation of the rules does not require dismissal of the appeal or the issue, although some other sanction may be appropriate, pursuant to Rule 25(b) *or* Rule 34 of the Rules of Appellate Procedure." *Id.* at 311, 644 S.E.2d at 202 (emphasis added). Therefore, when Rules violations are not so egregious as to warrant dismissal, sanctions "may be appropriate." This leaves open the possibility that sanctions may not be appropriate when the violations are minor.

"[T]he exercise of Rule 2 was intended to be limited to occasions in which a 'fundamental purpose' of the appellate rules is at stake, which will necessarily be 'rare occasions.' " *Id.* at 316, 644 S.E.2d at 205 (citations omitted). "Rule 2 must be applied cautiously." *Id.* at 315, 644 S.E.2d at 205. "Before exercising Rule 2 to prevent a manifest injustice, both [the Supreme] Court and the Court of Appeals must be cognizant of the appropriate circumstances in which the extraordinary step of suspending the operation of the appellate rules is a viable option." *Id.* at 317, 644 S.E.2d at 206.

Because Rule 2 is an "extraordinary step," I do not believe that it should be invoked every time there are Rules violations which fail to rise to the level of requiring dismissal. Just as sanctions may not be appropriate even for minor Rules violations, Rule 2 also may not be appropriate when the Rules violations are minor.

**N.C. STATE BAR v. KEY**

[187 N.C. App. 616 (2007)]

Since *Hart,* this Court has declined to dismiss an appeal and reached the merits of the case without invoking Rule 2 on several occasions. *See State v. Parker,* 187 N.C. App. 131, 135, 653 S.E.2d 6, 8 (2007) (chastising defense counsel for failing to state the appropriate standard of review pursuant to Rule 28(b)(6)); *Cotter v. Cotter,* 185 N.C. App. 511, 648 S.E.2d 552 (2007) (declining to dismiss, sanction, or invoke Rule 2 when the only violation was failure to state the standard of review pursuant to Rule 28(b)(6)); *State v. Burke,* 185 N.C. App. 115, 648 S.E.2d 256 (2007) (same when the violation of Rule 28(b)(6) was failing to cite the record page upon which the stated assignment of error was found); *Peverall v. County of Alamance,* 184 N.C. App. 88, 645 S.E.2d 416 (2007) (taxing printing costs to plaintiff's counsel for three violations of Rule 28(b)(6) and a violation of Rule 10(c)(1)); and *McKinley Bldg. Corp. v. Alvis,* 183 N.C. App. 500, 645 S.E.2d 219 (2007) (taxing printing costs to defendants' counsel for violations of Rules 28(b)(4), 28(b)(6), and 10(c)(1)).

I would reserve the invocation of Rule 2 for those cases in which the very nature of the particular Appellate Rule violation requires its use. One example of such a violation is the one in the case *sub judice.* Here, if we were to decline to invoke Rule 2, there would be no assignment of error to address.