NO. COA14-242

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

STATE OF NORTH CAROLINA

    v.

BOBBY LEE RAWLINGS,
       Defendant.

Wayne County
Nos. 06 CRS 52247
      06 CRS 52308

Appeal by defendant from judgments entered 16 August 2013 by Judge Jack W. Jenkins in Wayne County Superior Court. Heard in the Court of Appeals 28 August 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General John P. Barkley, for the State.*
>
> *John R. Mills for defendant-appellant.*

GEER, Judge.

Defendant Bobby Lee Rawlings appeals his convictions of attempted first degree murder, two counts of assault with a firearm on a law enforcement officer, assault with a deadly weapon with intent to kill ("AWDWIK"), and assault with a deadly weapon. On appeal, defendant primarily argues that the trial court erred in instructing the jury pursuant to N.C. Gen. Stat. § 14-51.4 (2013) that self-defense is not available to a person who used defensive force in the commission of a felony.

Defendant asserts that the General Assembly did not intend N.C. Gen. Stat. § 14-51.4 to apply when the defendant was committing a non-violent felony and was not an aggressor.

We do not address defendant's statutory construction argument because N.C. Gen. Stat. § 14-51.4 only applies to offenses occurring on or after 1 December 2011 and is, therefore, inapplicable to the 15 March 2006 offenses charged in this case. Although defendant did not recognize the inapplicability of the provision and, as a result, did not raise the issue at trial or on appeal, we have elected, in our discretion, to invoke Rule 2 of the Rules of Appellate Procedure and review the instruction for plain error. We hold that while the trial court erred in instructing the jury regarding a statutory amendment to the law of self-defense that had an effective date after the date of the offenses in this case, defendant has failed to meet his burden of showing that he was prejudiced by the instruction.

Defendant additionally argues that his convictions violate double jeopardy and that the trial court erred in entering judgment on AWDWIK when the jury returned a verdict of assault with a deadly weapon. We hold that defendant waived the double jeopardy argument and remand for correction of the judgment.

## Facts

The State's evidence tended to show the following facts. On 15 March 2006, at about 9:40 a.m., 11 officers from the Goldsboro Police Department ("GPD") and the Drug Enforcement Agency assembled at defendant's residence to execute a search warrant. Officer Daniel Peters of the GPD knocked on the back door and yelled, "Police, search warrant." He then struck the door with a ram three or four times but was unable to open it because there were two-by-fours propped up against the door from the inside to keep it shut. Eventually one of the officers was able to break the door off its hinges, and the officers entered the house.

Once inside, Officer Peters proceeded upstairs with Sergeant Max Staps of the Wayne County Sheriff's Office and Captain Brady Thompson of the GPD, announcing, again, "Police, search warrant," as they did so. Once upstairs, Sergeant Staps found defendant's roommate, Rico Lewis, asleep on a mattress in a room directly across from the stairs and apprehended him. Officer Peters and Captain Thompson proceeded down the hall to check the rest of the rooms. Officer Peters opened the door to defendant's room and saw defendant standing 10 to 15 feet away from him with a pistol in his hand. As soon as the door opened, defendant fired three shots. Officer Peters felt the first

bullet go past his arm, and retreated. Captain Thompson was hit in his bullet proof vest by one of the bullets.

After the shots were fired, Sergeant Staps left the room where he had Mr. Lewis handcuffed and went to the room across the hall from defendant's room, where he found Captain Thompson lying on the ground. Sergeant Staps checked Captain Thompson's pulse and checked to see if there was any blood. As he was checking on Captain Thompson, the door to defendant's room began to open. Sergeant Staps drew his weapon, announced that he was the police, and told defendant to put his gun down and give up. When the door opened, defendant had put down his gun and was sitting on the floor with his hands over his head. Defendant did not resist arrest.

When officers searched defendant, they found a significant amount of cocaine on his person. Additionally, officers found a marijuana cigarette, a police scanner, digital scales, and sandwich bags in defendant's house, as well as cocaine residue and bullets in defendant's vehicle. Testimony was presented that in the drug trade, digital scales are used to weigh controlled substances for sale, and sandwich bags are used for packaging.

On 3 July 2006, defendant was indicted, with respect to the shooting of Captain Thompson, for attempted first degree murder,

assault with a deadly weapon with intent to kill inflicting serious injury, and assault with a firearm on a law enforcement officer. With respect to Officer Peters, defendant was indicted for assault with a firearm on a law enforcement officer and AWDWIK. Defendant pleaded guilty and was sentenced to a term of 133 to 169 months imprisonment. On 10 April 2012, the superior court granted defendant's motion for appropriate relief and vacated his convictions. Defendant subsequently entered a plea of not guilty and was tried from 13 to 16 August 2013.

At trial, defendant testified in his own defense that he is a Vietnam War veteran who suffers from post-traumatic stress disorder. He lived at the residence on East Elm Street with a series of roommates. Five days before the officers executed their search warrant, defendant's roommate, Mr. Lewis, was robbed after an intruder entered through the back door of the house. After the robbery, defendant braced the back door with two-by-fours to keep the door closed. Defendant also bought a handgun, which he kept in his nightstand, because Mr. Lewis told defendant that he thought that the robbers were coming back.

On the morning of 15 March 2006, defendant was asleep in his bedroom when he was awakened by a boom. He then heard running up the stairs that panicked him "because nobody came up [his] stairs." He pulled out the handgun from his nightstand,

locked and loaded it, and laid back down to listen. The television in his bedroom was turned on, but he could hear "creeping" up the stairs and expected a robbery. He never heard anyone say "police" or "search warrant."

Defendant heard another boom as his bedroom door was kicked in, and he saw a black man wearing dark clothes with a gun pointed at him whom he thought was a "stickup kid." Defendant immediately fired two shots as the door flung open -- the door hit a file cabinet and bounced back shut again. After the door shut, defendant fired a clearance shot to make a noise so that he could crawl out of the bed onto the floor. When he then heard a lot of people running up the stairs, he asked, "[W]ho the hell is out there?" Several of the officers responded that it was law enforcement, and defendant realized, for the first time, that he was not being robbed. When he found out it was the police, he automatically put the gun down and lay down with his hands straight out in front of him until the officers arrested him.

The jury found defendant guilty of attempted first degree murder, AWDWIK, and assault with a firearm on a law enforcement officer for shooting Captain Thompson. The trial court sentenced defendant to presumptive-range terms of 251 to 311 months imprisonment for attempted first degree murder, 46 to 65

months imprisonment for assault with a firearm on a law enforcement officer, and 46 to 65 months imprisonment for AWDWIK. With respect to Officer Peters, the jury found defendant guilty of assault with a deadly weapon and assault with a firearm on a law enforcement officer. The trial court consolidated the two convictions and sentenced defendant on the more serious conviction to a presumptive-range term of 46 to 65 months imprisonment. All of the sentences ran concurrently. Defendant timely appealed to this Court.

## Discussion

Defendant first contends that the trial court erred in instructing the jury that "[s]elf-defense is not available to a person who used defensive force in the commission of a felony." Defendant argues that N.C. Gen. Stat. § 14-51.4, the statute upon which the instruction was based, should only be read to apply to the commission of violent offenses or where the defendant is the aggressor.

North Carolina has long recognized the common law right to use defensive force in one's home. *State v. Blue*, 356 N.C. 79, 88, 565 S.E.2d 133, 139 (2002) (examining rules governing common law defense of habitation and common law right to self defense while in one's home). However, in this case, the trial court instructed the jury pursuant to the statutory right to use

defensive force as provided by N.C. Gen. Stat. § 14-51.2 (2013) and N.C. Gen. Stat. § 14-51.3 (2013). Under the statutes, self-defense "is not available to a person who used defensive force and who . . . [w]as attempting to commit, committing, or escaping after the commission of a felony." N.C. Gen. Stat. § 14-51.4. Here, the trial court, over defendant's objection, granted the State's request to give this limiting instruction because the State presented evidence that at the time that defendant shot at the officers, he was committing the felonies of possession of cocaine and maintaining a dwelling for the purpose of using and selling controlled substances.

Defendant argues that the General Assembly did not intend N.C. Gen. Stat. § 14-51.4 to apply to the commission of non-violent felonies because that would deprive a non-aggressor of the ability to defend himself, with the result that "[t]he interpretation endorsed by the trial court would prevent a claim of self-defense during credit card fraud, tax evasion, possession of marijuana, or any other of the many non-violent felonies proscribed by North Carolina law." To avoid absurd consequences, defendant asserts, N.C. Gen. Stat. § 14-51.4 should be applied only to commission of violent felonies or where the defendant is the aggressor.

Apparently, neither defendant, the State, nor the trial court realized that N.C. Gen. Stat. § 14-51.4 only applies to offenses committed on or after 1 December 2011. *See* 2011 N.C. Sess. Laws ch. 268, § 26 ("Prosecutions for offenses committed before the effective date of this act are not abated or affected by this act, and the statutes that would be applicable but for this act remain applicable to those prosecutions."). Because defendant was charged based on acts committed on 15 March 2006, defendant is not subject to the self-defense statutes enacted by the General Assembly in 2011.

Defendant failed to raise this argument to the trial court or on appeal. Even if defendant had raised this argument on appeal, "'the law does not permit parties to swap horses between courts in order to get a better mount,' . . . meaning, of course, that a contention not raised and argued in the trial court may not be raised and argued for the first time in the appellate court." *Wood v. Weldon*, 160 N.C. App. 697, 699, 586 S.E.2d 801, 803 (2003) (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)).

This Court has recognized, however, that "[i]n cases where a party has failed to preserve an argument for appellate review, 'Rule 2 permits the appellate courts to excuse a party's default . . . when necessary to prevent manifest injustice to a party or

to expedite decision in the public interest.'" *In re Hayes*, 199 N.C. App. 69, 76, 681 S.E.2d 395, 400 (2009) (quoting *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008)). North Carolina courts have invoked Rule 2 when all the parties and the trial court operated under an erroneous assumption of law. *Id.*

In this case, the record reflects that the trial court prepared the proposed jury instructions "relying exclusively on the North Carolina Pattern Jury Instructions including the footnotes therein." The Pattern Jury Instruction Committee revised the criminal pattern instructions in June 2012 to incorporate the changes made to the common law by the new self-defense statutes enacted in 2011. It is evident from the record that the defendant, the State, and the trial court were all operating under the erroneous assumption that the Pattern Jury instructions correctly reflected the law applicable to defendant's offenses.

Defendant did, however, preserve at the trial level the statutory construction argument that he makes on appeal regarding the 2011 statute. We are reluctant to decide, as a case of first impression, how this addition to the self-defense law should be interpreted and applied in a case in which the statute does not apply. Under these unique circumstances, we

have decided, in the interest of justice, to invoke Rule 2 of the Rules of Appellate Procedure and to review the jury instructions for plain error.

In order to establish plain error, defendant "must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice -- that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citation and quotation marks omitted).

In arguing that the trial court erred in instructing the jury that self-defense did not apply if defendant was committing a felony, defendant argued that he was prejudiced because "[h]ad the jurors been properly instructed, there is a reasonable probability that at least one juror would have reached a different result. Without any reference to the 'in commission of a felony' limitation, at least one juror might have credited [defendant's] account and found him not guilty." This argument is insufficient to meet defendant's burden of showing that there is a reasonable possibility that *the jury* would have reached a different verdict in the absence of the instruction. *See* N.C. Gen. Stat. § 15A-1443(a) (2013) ("A defendant is prejudiced by

errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, *a different result would have been reached* at the trial out of which the appeal arises." (emphasis added)). Certainly, defendant has not shown and, given the evidence, we cannot find, that the instruction had a *probable impact* on the verdict, as opposed to possibly influencing a single juror.

We, therefore hold that the trial court did not commit plain error when it instructed the jury using the 2012 version of the pattern jury instructions. We express no opinion regarding the proper construction of N.C. Gen. Stat. § 14-51.4.

Defendant next argues that his sentences for the offenses arising out of the shooting of Captain Thompson violate the prohibition on double jeopardy. Defendant concedes that he did not raise the double jeopardy issue below. "Constitutional questions not raised and passed on by the trial court will not ordinarily be considered on appeal." *State v. Tirado*, 358 N.C. 551, 571, 599 S.E.2d 515, 529 (2004). Our Supreme Court has held that the issue of double jeopardy cannot be raised for the first time on appeal. *State v. Davis*, 364 N.C. 297, 301, 698 S.E.2d 65, 67 (2010) ("To the extent defendant relies on constitutional double jeopardy principles, we agree that his

argument is not preserved[.]"); *see also State v. Madric*, 328 N.C. 223, 231, 400 S.E.2d 31, 36 (1991) (holding that defendant waived double jeopardy argument for failure to raise issue in trial court). Therefore, we hold that defendant has failed to preserve this issue for appellate review and do not address it.

Defendant, nevertheless, requests that we apply Rule 2 and address the issue of double jeopardy, citing *State v. Dudley*, 319 N.C. 656, 659-60, 356 S.E.2d 361, 364 (1987) (invoking Rule 2 to address double jeopardy issue), and *State v. Mulder*, ___ N.C. App. ___, ___, 755 S.E.2d 98, 101 (2014) (same). "The decision to review an unpreserved argument relating to double jeopardy is entirely discretionary." *Id.* at ___, 755 S.E.2d at 101. Here, even assuming, without deciding, that sentencing defendant on all three convictions violated double jeopardy, arresting judgment on one of the convictions would not alter the total time defendant is required to serve because the trial court ordered the sentences to run concurrently. Under these circumstances, the extraordinary relief of invoking Rule 2 is not necessary to prevent manifest injustice. In our discretion, we decline to address this issue.

Finally, defendant argues that, with respect to the charges related to Officer Peters, the trial court erred in entering judgment on the offense of AWDWIK because the trial court

instructed the jury and accepted a verdict of guilty on the lesser-included offense of assault with a deadly weapon.

The State concedes that defendant was convicted of assault with a deadly weapon, and that the trial court erred and entered judgment on the greater offense of AWDWIK. It is, however, apparent that this error was merely a clerical one. The two offenses for which defendant was originally indicted regarding Officer Peters were AWDWIK (in Count IV) and assault with a firearm on a law enforcement officer (Count V). Both of those offenses are class E felonies. Assault with a deadly weapon is, however, punished as a class A1 misdemeanor. At sentencing, the trial court announced: "And then the last two, Count IV and Count V, the Court is going to consolidate these two, and the most serious of those two is the Count V, which is the Class E . . . ." Thus, because the trial court was aware that defendant's conviction under Count IV did not involve a class E felony, the court necessarily recognized that defendant had not been convicted of AWDWIK. Accordingly, any error on the judgment amounts to a clerical error. We, therefore, remand for correction of the judgment.

Defendant, however, citing *State v. Dickens*, 162 N.C. App. 632, 640, 592 S.E.2d 567, 573 (2004), also correctly notes that convictions for both assault with a deadly weapon and assault

with a firearm on a law enforcement officer, when based upon the same conduct, violate double jeopardy. Defendant, however, failed to preserve this issue and, based on our review of the record, we cannot conclude that review is necessary to prevent manifest injustice since the trial court ordered that all of the sentences run concurrently.

No error in part; remanded in part.

Judge STEELMAN concurs in the result per separate opinion.

Judge ROBERT N. HUNTER, JR. concurred in this opinion prior to 6 September 2014.

NO. COA14-242

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

STATE OF NORTH CAROLINA

    v.

BOBBY L. RAWLINGS,
        Defendant.

Wayne County
Nos. 6 CRS 52247
     6 CRS 52308

Judge STEELMAN, concurring in the result.

I concur in the result reached by the majority in this case, but write separately because it is inappropriate to invoke Rule 2 of the Rules of Appellate Procedure as to defendant's first argument. It cannot be a "manifest injustice" or the expediting of a "decision in the public interest" to consider an argument made by defendant under a statute that was inapplicable to the offenses for which defendant was tried. *See* N.C. R. App. P. 2; *see also* S.L. 2011-268 § 26, eff. Dec. 1, 2011.