BRYANT, Judge.
 

 *86
 
 Where defendant Adam Warren Conley failed to present his constitutional double jeopardy argument before the trial court, it was not properly preserved for our review. Accordingly, we dismiss the constitutional argument defendant presents on appeal. However, where the trial court entered a sentence in excess of statutory authority, we reverse and remand the matter for resentencing on the offenses of possession of a gun on educational property.
 

 On 29 June 2015, a Macon County grand jury issued an indictment which contained eleven offenses against defendant: attempted murder, discharge of a firearm on educational property, six counts of possession of a firearm on educational property, assault by pointing a gun, cruelty to animals, and possession of firearms in violation of a DVPO. The matter came on for trial before a jury during the 7 August 2017 session of Macon County Superior Court, the Honorable Robert T. Sumner, Judge presiding.
 

 The evidence at trial tended to show that on 4 June 2015 at 4:40 a.m., a resident who lived on Union School Road heard several gunshots. Shortly thereafter, the resident observed two people walking down his driveway toward Union School Road. Law enforcement officers
 
 *87
 
 responded to the resident's address and searched the area, but no person, gun, bullets, or shell casings were found.
 

 At 5:00 a.m. that same morning, Alice Bradley was at South Macon Elementary School to prepare her school bus for the morning route. Using her car, Bradley picked up her sister who was parked in the teacher's lot and drove to the school building, where they turned on inside lights and conducted a safety check. At 5:15 a.m., Bradley drove back to her school bus, parked, and noted the presence of two people in the parking lot about twenty yards away. Bradley later identified the two people as defendant and Kathryn Jeter. Defendant pointed a silver handgun at Bradley before he headed toward the athletic field. Bradley boarded her school bus and radioed the bus garage to request a deputy sheriff.
 

 At 5:20 a.m., Sheriff Deputy Audrey Parrish with the Macon County Sheriff's Department responded to South Macon Elementary in response to a 9-1-1 call. When Deputy Parrish encountered defendant and Jeter, she directed them to stop walking away, to turn, and walk toward her. About fifty yards away from Deputy Parrish, defendant turned, raised a "large silver [handgun]," and pointed it at Deputy Parrish. Deputy Parrish testified that it was very quiet; she heard the handgun trigger "snap"; but the gun did not
 
 *12
 
 fire. Deputy Parrish retreated to her vehicle, where she radioed for assistance. By 5:30 a.m., several sheriff's deputies had responded to the school and engaged defendant. When defendant was taken into custody, law enforcement officers observed "a large silver gun" and a smaller "Derringer, pocket-style [gun]" on the ground. And in addition to the firearms on the ground, "[defendant] had two guns, one on each side on his waist and holsters, as well as other [large] knives ... on his person that we could see sticking out of his boot ...." Moreover, law enforcement officers located defendant's tote bag on Bradley's school bus. Bradley mentioned that the bag was not there when she walked through the bus at 5:00 a.m., before she and her sister entered the school building. The bag contained a pistol.
 

 At the close of the State's evidence, the trial court dismissed the charge of discharge of a firearm on educational property and violation of the DVPO. Defendant did not present any evidence. The jury returned guilty verdicts against defendant on the charges of attempted first-degree murder, five counts of possession of a gun on educational property, possession of knives on educational property, and assault by pointing a gun. The trial court entered judgments in accordance with the jury verdicts. For attempted first-degree murder, defendant was sentenced to an active term of 170 to 216 months. In a consolidated judgment for three counts of possession of a gun on educational property, defendant was
 
 *88
 
 sentenced to an active term of 6 to 17 months to be served consecutive to the sentence for attempted first-degree murder. In a separate consolidated judgment for two counts of possession of a gun on educational property, one count of weapons on educational property, assault by pointing a gun, and cruelty to animals, defendant was again sentenced to 6 to 17 months to be served consecutive to the judgment for three counts of possession of a gun on educational property; however, this sentence was suspended. The court ordered that for this judgment, following his release from incarceration, defendant was to be placed on supervised probation for a 24-month period. Defendant appeals.
 

 _________________________
 

 On appeal, defendant argues that the trial court erred by entering judgments on five counts of possession of a gun on educational property. Defendant contends that constitutional protections against double jeopardy guard against entry of judgment on more than one count of the offense of simultaneous possession of "any gun" on educational property. We dismiss this issue.
 

 Defendant acknowledges that his constitutional challenge to the entry of judgments against him was not presented before the trial court. Pursuant to our Rules of Appellate Procedure, "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion ...." N.C.R. App. P. 10(a)(1) (2018). "It is a well established rule of [our appellate courts] that [we] will not decide a constitutional question which was not raised or considered in the court below."
 
 Bland v. City of Wilmington
 
 ,
 
 278 N.C. 657
 
 , 660,
 
 180 S.E.2d 813
 
 , 816 (1971) (citation omitted);
 
 see
 

 State v. Gainey
 
 ,
 
 355 N.C. 73
 
 , 87,
 
 558 S.E.2d 463
 
 , 473 (2002) ("Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal." (citing
 
 State v. Benson
 
 ,
 
 323 N.C. 318
 
 , 322,
 
 372 S.E.2d 517
 
 , 519 (1988) );
 
 see also
 

 State v. Davis
 
 ,
 
 364 N.C. 297
 
 , 301,
 
 698 S.E.2d 65
 
 , 67 (2010) (holding that to the extent the defendant relies on an unpreserved constitutional double jeopardy argument, the argument would not be addressed);
 
 State v. Madric
 
 ,
 
 328 N.C. 223
 
 , 231,
 
 400 S.E.2d 31
 
 , 36 (1991) (same);
 
 State v. Mitchell
 
 ,
 
 317 N.C. 661
 
 , 670,
 
 346 S.E.2d 458
 
 , 463 (1986) (same). In order to reach the merits of his argument, defendant asks that we invoke Rule 2 of our Rules of Appellate Procedure in order to suspend the Rules of Appellate Procedure.
 

 Pursuant to Rule 2, "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may ... suspend or vary the requirements or provisions
 
 *89
 
 of any of the[ ] [appellate] rules in a case pending before it ...." N.C.R. App. P. 2 (2017).
 

 *13
 
 Rule 2 must be applied cautiously. ... "While it is certainly true that Rule 2 has been and may be so applied in the discretion of the Court, we reaffirm that Rule 2 relates to the residual power of our appellate courts to consider, in exceptional circumstances, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court and only in such instances." [
 
 Steingress v. Steingress
 
 ,
 
 350 N.C. 64
 
 , 66,
 
 511 S.E.2d 298
 
 , 299-300 (1999) ] (citing
 
 Blumenthal v. Lynch
 
 ,
 
 315 N.C. 571
 
 , 578,
 
 340 S.E.2d 358
 
 , 362 (1986) ).
 

 ....
 

 Before exercising Rule 2 [,] ... the Court of Appeals must be cognizant of the appropriate circumstances in which the extraordinary step of suspending the operation of the appellate rules is a viable option. Fundamental fairness and the predictable operation of the courts for which our Rules of Appellate Procedure were designed depend upon the consistent exercise of this authority.
 

 State v. Hart
 
 ,
 
 361 N.C. 309
 
 , 315-17,
 
 644 S.E.2d 201
 
 , 205-06 (2007). "Appellate Rule 2 has most consistently been invoked to prevent manifest injustice in criminal cases in which substantial rights of a defendant are affected."
 
 State v. Spencer
 
 ,
 
 187 N.C. App. 605
 
 , 612,
 
 654 S.E.2d 69
 
 , 73 (2007) (citation omitted) (invoking Rule 2 to reach the merits of the defendant's argument where defendant was erroneously convicted of both larceny and possession of the same stolen property).
 

 This assessment-whether a particular case is one of the rare "instances" appropriate for Rule 2 review-must necessarily be made in light of the
 
 specific circumstances of individual cases and parties
 
 , such as whether "substantial rights of an appellant are affected."
 
 State v. Hart
 
 ,
 
 361 N.C. 309
 
 , 316,
 
 644 S.E.2d 201
 
 , 205 (2007) (citing,
 
 inter alia
 
 ,
 
 State v. Sanders
 
 ,
 
 312 N.C. 318
 
 , 320,
 
 321 S.E.2d 836
 
 , 837 (1984) (per curiam) ("
 
 In view of the gravity of the offenses for which defendant was tried and the penalty of death which was imposed
 
 , we choose to exercise our supervisory powers under Rule 2 of the Rules of Appellate Procedure and, in the interest of justice, vacate the judgments entered and
 
 *90
 
 order a new trial.") (emphasis added) ). In simple terms, precedent cannot create an automatic right to review via Rule 2. Instead, whether an appellant has demonstrated that his matter is the rare case meriting suspension of our appellate rules is always a discretionary determination to be made on a case-by-case basis.
 
 See
 
 [
 
 Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.
 
 ,
 
 362 N.C. 191
 
 , 196,
 
 657 S.E.2d 361
 
 , 364 (2008) ]; [
 
 Hart
 
 ,
 
 361 N.C. 309
 
 , 315-17,
 
 644 S.E.2d 201
 
 , 204-06 [2007] ;
 
 Steingress
 
 ,
 
 350 N.C. at 66
 
 ,
 
 511 S.E.2d at 299-300
 
 .
 

 State v. Campbell
 
 ,
 
 369 N.C. 599
 
 , 603,
 
 799 S.E.2d 600
 
 , 602-03 (2017) ;
 
 see also
 

 State v. Miller
 
 ,
 
 245 N.C. App. 313
 
 , 315-16,
 
 782 S.E.2d 328
 
 , 330 (declining to invoke Rule 2 to reach the merits of the defendant's unpreserved constitutional double jeopardy argument),
 
 review denied
 
 , --- N.C. ----,
 
 787 S.E.2d 40
 
 (2016) ;
 
 State v. Rawlings
 
 ,
 
 236 N.C. App. 437
 
 , 443-44,
 
 762 S.E.2d 909
 
 , 914-15 (2014) (same).
 

 Here, the trial court entered judgments against defendant for the offenses of attempted first-degree murder, five counts of possession of a gun on educational property, one count of weapons on educational property, assault by pointing a gun, and cruelty to animals. The offenses were consolidated into three judgments, each committing defendant to an active term to be served consecutively: 170 to 216 months for attempted first-degree murder; 6 to 17 months for three counts of possession of a gun on educational property; and 6 to 17 months for two counts of possession of a gun on educational property, one count of weapons on educational property, assault by pointing a gun, and cruelty to animals. However, the court suspended the 6 to 17 month active sentence imposed in the judgment entered on two counts of possession of a gun on educational property, one count of weapons on educational property, assault by pointing a gun, and cruelty to animals, instead placing defendant on supervised probation for a period of 24 months. The offenses of possession of a weapon on educational property and cruelty to animals are each Class 1 misdemeanors.
 
 N.C. Gen. Stat. §§ 14-269.2
 
 (d), -360(a) (2017). The offense of assault by pointing a gun is a Class A1 misdemeanor.
 

 Id.
 

 § 14-34. A conviction
 
 *14
 
 for a Class A1 misdemeanor authorizes a trial court to impose on a defendant with a Level III prior record level (such as defendant's misdemeanor prior record level, here) a term of 1 to 150 days of community, intermediate, or active punishment,
 

 id.
 

 § 15A-1340.23(c), and authority to suspend that sentence and place defendant on supervised probation for a period of up to 24 months,
 

 id.
 

 § 15A-1343.2(d)(2). Thus, even if we presume
 
 *91
 
 error in entering judgment on multiple counts of possession of a gun on educational property, defendant's current sentence is within the range of sentences authorized.
 

 Where defendant failed to raise his constitutional double jeopardy argument before the trial court and thus failed to preserve it for our review and where-even presuming error in the judgment and remand for resentencing-the sentence currently imposed would be within the sentence range intended by our legislature and authorized by our General Statutes, we do not believe the circumstances of this case so impact defendant's substantial rights or present such an exceptional circumstance,
 
 see
 

 Campbell
 
 ,
 
 369 N.C. at 603
 
 ,
 
 799 S.E.2d at 602
 
 , an issue of public interest, or manifest injustice to merit the suspension of our Rules of Appellate Procedure pursuant to Rule 2. N.C.R. App. P. 2. Accordingly, we dismiss this argument.
 

 Apart from his double jeopardy argument, defendant asks whether section 14-269.2(b) permits entry of multiple convictions for the simultaneous possession of multiple guns and further contends that the State's evidence only supported entry of one conviction.
 

 It is well established that "when a trial court acts contrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial."
 
 State v. Ashe
 
 ,
 
 314 N.C. 28
 
 , 39,
 
 331 S.E.2d 652
 
 , 659 (1985) (citing
 
 State v. Bryant
 
 ,
 
 189 N.C. 112
 
 ,
 
 126 S.E. 107
 
 (1925) );
 
 see also
 
 [
 
 State v. Tirado
 
 ,
 
 358 N.C. 551
 
 , 571,
 
 599 S.E.2d 515
 
 , 529 (2004) ] (finding waiver of the constitutional argument that the defendant was denied a fair and impartial jury, but addressing the interrelated contention that the trial court violated its statutory duty to ensure a randomly selected jury).
 

 State v. Davis
 
 ,
 
 364 N.C. 297
 
 , 301-02,
 
 698 S.E.2d 65
 
 , 67-68 (2010) ;
 
 see also
 
 N.C. Gen. Stat. § 15A-1446(d)(18) (2017) (preserving for appellate review asserted errors occurring where "[t]he sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law" "even though no objection, exception or motion has been made in the trial division");
 
 State v. Meadows
 
 , --- N.C. ----,
 
 821 S.E.2d 402
 
 , 406 (2018).
 

 In support of his argument that the "any gun" language of General Statutes, section 14-269.2(b), only permits entry of one conviction for
 
 *92
 
 possession of a gun on educational property, defendant cites
 
 State v. Garris
 
 ,
 
 191 N.C. App. 276
 
 ,
 
 663 S.E.2d 340
 
 (2008). In
 
 Garris
 
 , the Court addressed whether the "any firearm" language of section 14-415.1 (prohibiting possession of a firearm by a felon) precluded entry of multiple convictions for possession of a firearm by a felon though several weapons were possessed simultaneously.
 
 Id.
 
 at 282-85,
 
 663 S.E.2d at 346-48
 
 . At the time a matter of first impression, the Court observed that the statutory language "any firearm" was
 

 ambiguous in that it could be construed as referring to a single firearm or multiple firearms. If construed as any single firearm, [section 14-415.1] would allow for multiple convictions for possession if multiple firearms were possessed, even if they were possessed simultaneously. Alternatively, if construed as any group of firearms, the statute would allow for only one conviction where multiple firearms were possessed simultaneously.
 

 Id.
 
 at 283,
 
 663 S.E.2d at 346
 
 . Having looked to federal law, this Court wrote "[t]he United States Supreme Court holds that ambiguity in the statute should be resolved in favor of lenity, and doubt must be resolved against turning a single transaction into multiple offenses."
 
 Id.
 
 at 283-84,
 
 663 S.E.2d at
 
 347 (citing
 
 *15
 

 Bell v. United States
 
 ,
 
 349 U.S. 81
 
 , 83-84,
 
 75 S.Ct. 620
 
 ,
 
 99 L.Ed. 905
 
 , 910-11 (1955) ) );
 
 see also
 

 United States v. Dunford
 
 ,
 
 148 F.3d 385
 
 , 389-90 (4th Cir.1998) (holding that six firearms simultaneously seized from a defendant's home only supported one conviction under
 
 18 U.S.C. § 922
 
 (g) (prohibiting the possession of "any firearm" by a person coming within an enumerated category) ). Moreover, within the jurisprudence of this State, "[i]n construing a criminal statute, the presumption is against multiple punishments in the absence of a contrary legislative intent."
 
 Garris
 
 ,
 
 191 N.C. App. at 284
 
 ,
 
 663 S.E.2d at
 
 347 (citing
 
 State v. Boykin
 
 ,
 
 78 N.C. App. 572
 
 , 576-77,
 
 337 S.E.2d 678
 
 , 681 (1985) (holding that
 
 N.C. Gen. Stat. § 14-72
 
 (b)(4) (larceny of a firearm) did not intend to create a separate unit of prosecution for each firearm stolen or allow multiple punishments for the theft of multiple firearms) ).
 

 As in
 
 Garris
 
 , we hold that the language of section 14-269.2(b) describing the offense of "knowingly ... possess[ing] or carry[ing], whether openly or concealed, any gun, rifle, pistol, or other firearm of any kind on educational property," N.C.G.S. § 14-269.2(b), is ambiguous as to whether multiple punishments for the simultaneous possession of multiple firearms is authorized. And consistent with this Court's application of the rule of lenity, also as applied in
 
 Garris
 
 , we hold that
 
 *93
 
 section 14-269.2(b) does not allow multiple punishments for the simultaneous possession of multiple firearms on educational property. Accordingly, we reverse and remand this matter to the trial court for resentencing of the judgments entered on the offenses of possession of a gun on educational property.
 

 REVERSED AND REMANDED.
 

 Judges DILLON and ZACHARY concur.