STATE OF NORTH CAROLINA v. DARRELL LUGENE GARRIS

No. COA07-1388

(Filed 15 July 2008)

**1. Evidence— officers' service weapons—SBI's chain of custody procedures**

In a prosecution for attempted murder of a police officer, communicating threats to officers and other crimes, the trial court did not abuse its discretion by allowing testimony establishing the chain of custody of the arresting officers' service weapons, which had been fired in pursuit of defendant and collected as evidence, because: (1) the nature of the testimony did not suggest that the officers had been cleared of any wrongdoing, including unlawfully using excessive force against defendant, even though their service weapons had been returned to them; (2) the testimony referred to all items collected for evidence and was allowed only to show the SBI's general procedures regarding evidence; and (3) by allowing the testimony to show a procedural rule of the SBI, the jury was not led to believe that the officers had done no wrong.

**2. Firearms and Other Weapons— possession of firearm by felon—simultaneous possession of multiple firearms— single conviction and sentence**

A defendant may be convicted and sentenced only once for possession of a firearm by a felon based upon his simultaneous possession of multiple firearms. The rule of lenity forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the legislature has not clearly stated such an intention, and a review of N.C.G.S. § 14-415.1(a) shows no indication that the legislature intended for the statute to impose multiple penalties for a defendant's simultaneous possession of multiple firearms.

STATE v. GARRIS

[191 N.C. App. 276 (2008)]

**3. Constitutional Law— attempted murder—assault with deadly weapon with intent to kill—double jeopardy inapplicable—arrest of judgment on less serious offense—not abuse of discretion**

Although the offenses of attempted murder and assault with a deadly weapon with intent to kill arose out of the same factual basis, they were distinct offenses because each had an element not present in the other, and the trial court could sentence defendant for both of those offenses without subjecting defendant to double jeopardy and was not required to arrest judgment entered on either offense. Therefore, the trial court did not abuse its discretion by arresting judgment on the less serious offense of assault with a deadly weapon with intent to kill and entering a sentence based on the more serious attempted murder conviction.

**4. Criminal Law— failure to instruct on perfect or imperfect self-defense—plain error analysis**

The trial court did not commit plain error in a prosecution for attempted first-degree murder of a police officer and assault with a deadly weapon with intent to kill by failing to instruct the jury on defendant's availability of perfect or imperfect self-defense because: (1) within reasonable limits, an officer has discretion to determine the amount of force required under the circumstances as they appeared to him at the time he acted; (2) it is not incumbent upon the State to prove the officer did not use excessive force; (3) the evidence showed that defendant threatened he would shoot, the officer had reason to believe that defendant had weapons on his person or within the bag he carried with him, and the trial court could reasonably find the officer acted within his discretion when he fired at defendant given the danger of the circumstances and the risk of great bodily harm if defendant carried out his threat to shoot; and (4) defendant failed to present substantial evidence showing the officer acted with unusual force given the circumstances.

Appeal by defendant from judgments entered 1 June 2007 by Judge John L. Holshouser, Jr., in Davidson County Superior Court. Heard in the Court of Appeals 17 April 2008.

STATE v. GARRIS

[191 N.C. App. 276 (2008)]

*Attorney General Roy Cooper, by Special Deputy Attorney General R. Marcus Lodge, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Charlesena Elliott Walker, for defendant appellant.*

McCULLOUGH, Judge.

Darrell Lugene Garris ("defendant") appeals judgments entered after a jury verdict of guilty of one count of attempted first-degree murder, one count of assault with a deadly weapon with intent to kill, two counts of possession of a firearm by a felon, one count of communicating threats to police officers, and possession of marijuana with intent to sell or distribute. We affirm in part and reverse in part.

## FACTS

Late at night on 29 March 2006, Thomasville Police Officers Rusty Fritz ("Officer Fritz") and Timothy Adams ("Officer Adams") stopped a speeding car with no tag lights and a taillight out. Following this stop, the officers searched defendant, who had been sitting in the vehicle's front passenger seat, and then told defendant he was "free to go." Defendant was given permission to retrieve a CD from the car, but instead he took out a black plastic bag from the car. When defendant was questioned about the contents of the bag, he opened it enough so that Officer Fritz could see a bag of marijuana inside the black plastic bag. Defendant then began to run away from the officers.

During Officer Fritz's pursuit, defendant threatened, "back up or I'll shoot." Defendant did not follow through with his threat at that time. Officer Fritz saw no weapon in defendant's possession when the threat was made, although defendant's hand was inside the black plastic bag. Officer Fritz struck defendant in the leg with his baton, and then defendant continued to run.

Officer Fritz testified that defendant fired multiple times at him. Officer Fritz fired his weapon at defendant eight times, while defendant attempted to run away. Officer Fritz testified that defendant was first to fire a weapon. Officer Steven Currie ("Officer Currie"), who later arrived on the scene, shot at defendant twice while he was within twenty feet. Defendant was hit twice as he was being pursued, once in the abdomen and once in the leg.

Officers found a Bryco Arms brand nine millimeter semi-automatic gun in a black plastic bag located at the corner of a house, near where defendant was shot. On 29 March 2006, officers also found a nine millimeter .380 FEG brand semi-automatic pistol by a trash can behind a residence, along the route defendant ran while being chased. Officers also recovered two spent shell casings matching the .380 pistol.

Defendant was charged with attempted murder, assault with a deadly weapon with intent to kill, two counts of possession of a firearm by a felon, possession with intent to sell or distribute marijuana, communicating threats, and possession of stolen property. On 28 May 2007, defendant was tried in Davidson County's Superior Court. At the close of the State's evidence, Judge Holshouser dismissed the possession of stolen property charge. The jury returned verdicts finding defendant guilty of the remaining charges.

The trial court arrested the assault sentence pursuant to the State's contention that it was based upon the same facts as the attempted first-degree murder conviction, and sentenced defendant to consecutive terms of 220-273 months and 15-18 months of imprisonment for the attempted murder conviction and one count of possession of a firearm by a felon, respectively. The trial court consolidated the second possession of a firearm conviction with the convictions for possession with intent to sell or distribute marijuana and communicating threats, and sentenced defendant to a suspended sentence of 15-18 months. Defendant appeals.

I.

[1] On appeal, defendant contends that the trial court erred by allowing the introduction of certain testimony referring to the chain of custody procedures followed by the State Bureau of Investigation ("SBI"). Specifically, defendant objects to SBI testimony stating that evidence collected at the crime scene is transferred back to the local police department once the District Attorney "clears the [police] officer of any wrongdoing." We disagree with defendant, and hold that the trial court did not err.

Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2007). Furthermore, "[e]vidence is 'relevant when it reveals a circumstance surrounding

one of the parties and is necessary to understand properly their conduct or motives or if [the evidence] allows the jury to draw a reasonable inference as to a disputed fact.' " *State v. Fleming*, 350 N.C. 109, 130, 512 S.E.2d 720, 735, *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274 (1999) (citation omitted).

The trial court's ruling on the relevance of evidence is generally given great deference. *See State v. Godley*, 140 N.C. App. 15, 25, 535 S.E.2d 566, 574 (2000), *disc. review denied*, 353 N.C. 387, 547 S.E.2d 25, *cert. denied*, 532 U.S. 964, 149 L. Ed. 2d 384 (2001). Even when evidence is determined to be relevant, the trial court may exclude it if its probative value is·substantially outweighed by the potential for unfair prejudice, confusion, or misleading the jury. *See* N.C. Gen. Stat. § 8C-1, Rule 403 (2007); *see also State v. Wallace*, 351 N.C. 481, 523, 528 S.E.2d 326, 352-53, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000), *reh'g denied*, 531 U.S. 1120, 148 L. Ed. 2d 784 (2001), *cert. denied*, 360 N.C. 76 (2005). "A trial judge's decision under Rule 403 regarding the relative balance of probative weight and potential for prejudice will only be overturned for an abuse of discretion." *State v. Hyman*, 153 N.C. App. 396, 401-02, 570 S.E.2d 745, 749 (2002), *cert. denied*, 357 N.C. 253, 583 S.E.2d 41 (2003).

Defendant has the burden of showing that prejudice existed, such that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2007). Furthermore, even admission of irrelevant evidence "will be treated as harmless unless the defendant shows that he was so prejudiced by the erroneous admission that a different result would have ensued if the evidence had been excluded." *State v. Harper*, 96 N.C. App. 36, 42, 384 S.E.2d 297, 300 (1989).

Before an item may be received into evidence, the party offering the evidence must establish both that the item offered is identified as the same object involved in the incident and that the object has undergone no material change. *See State v. Campbell*, 311 N.C. 386, 388, 317 S.E.2d 391, 392 (1984). A detailed chain of custody of the evidence need only be established when "the evidence offered is not readily identifiable or is susceptible to alteration and there is reason to believe that it may have been altered." *Id.* at 389, 317 S.E.2d at 392. "Determining the standard of certainty required to show that the item offered is the same as the item involved in the incident and that it is in an unchanged condition lies within the trial court's sound discre-

STATE v. GARRIS

[191 N.C. App. 276 (2008)]

tion." *Fleming*, 350 N.C. at 131, 512 S.E.2d at 736. Any weak links in the chain of custody affect only the weight given to the evidence and not its admissibility. *See id.* After reviewing the record in the instant case, we conclude that defendant has not met his burden of showing that the introduction of a statement establishing the chain of custody of the officers' service weapons was unduly prejudicial.

During trial, Special Agent Patrick Daly ("Agent Daly") testified that the police officers' service weapons, which had been fired in pursuit of defendant and collected as evidence, were later returned into the custody and control of the Thomasville Police Department. In reference to multiple items collected for evidence, including a blood-stained T-shirt and tennis shoes, Agent Daly stated that

> [o]nce the items have been completely analyzed at the lab, they come back to me. I maintain custody of those in our evidence locker in our office. Once the District Attorney rules on the case and clears the officer of any wrongdoing, then the items are transferred back to the local departments.

Defense counsel objected to this statement on the grounds that it implied the officers had done no wrong. The objection by the defense counsel regarding the characterization of wrongdoing was sustained as it may have reflected upon defendant, but the evidence was allowed to show SBI procedure.

Defendant argues that the trial court committed prejudicial error because the testimony suggested that the prosecutor had already determined the officers were without fault. Furthermore, defendant contends the testimony's only purpose was to implicitly suggest to jurors that there was no need for them to concern themselves with the question of whether the officers were acting unlawfully, which, if answered in the affirmative, may have permitted defendant to act in self-defense.

Defendant also contends that evidence of the department rule that police officers' service weapons are returned "[o]nce the District Attorney rules on the case and clears the officer of any wrongdoing" was not relevant because the officers' service weapons were not then introduced into evidence after their chain of custody was established.

The nature of the testimony does not suggest that because the officers' service weapons had been returned to them, they had been cleared of any wrongdoing, including unlawfully using excessive force against defendant. The testimony referred to all items collected

for evidence, and was allowed only to show the SBI's general procedure regarding evidence. "We presume 'that jurors . . . attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.' " *State v. Jennings*, 333 N.C. 579, 618, 430 S.E.2d 188, 208, *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993) (quoting *Francis v. Franklin*, 471 U.S. 307, 324 n.9, 85 L. Ed. 2d 344, 360 n.9 (1985)). Accordingly, the jury presumably only considered the agent's testimony as clarification of a procedural rule, and not to determine whether actions by either party were lawful. Whether the officers in fact used excessive force by firing their weapons at defendant, and whether defendant was able to lawfully defend himself, were questions of fact for the jury to decide. By allowing the testimony solely to show the procedural rule of the SBI, the jury was not led to believe that the officers had done no wrong. In allowing the testimony regarding SBI procedure, the trial court was acting within its sound discretion in determining that any items subsequently offered for evidence were the same as the objects involved in the incident and that the objects would have undergone no material change. *See Campbell*, 311 N.C. at 388, 317 S.E.2d at 392.

The testimony conflicts as to whether defendant fired first or only after Officer Fritz fired at defendant. Defendant's evidence tends to show that defendant fired only after the officers first shot at him. In contrast, the State's evidence tends to show that defendant fired at the officers first. In the present case, we find that defendant has not shown there is a reasonable possibility that, had the testimony regarding the procedural rule of the SBI not been allowed, the trial court would have reached a different result. *See* N.C. Gen. Stat. § 15A-1443(a). Accordingly, defendant has not met his burden of proof.

After reviewing the record, we hold that the trial judge did not abuse his discretion in finding that the probative value of the testimony outweighed the possibility of unfair prejudice to defendant. Furthermore, we find defendant's argument was insufficient to establish the evidence would have resulted in a different outcome at trial. Accordingly, the trial court did not err in allowing Agent Daly's testimony regarding the chain of evidence.

II.

[2] The next issue on appeal is whether the trial court erred by entering two felony convictions for possession of a firearm by a felon

instead of one felony conviction. Defendant argues that the statute prohibiting the possession of firearms by those convicted of felonies does not provide for multiple convictions when several weapons are possessed simultaneously. We agree.

North Carolina's Felony Firearms Act provides that it is "unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control *any firearm* or any weapon of mass death and destruction" as defined in N.C. Gen. Stat. § 14-288.8(c). N.C. Gen. Stat. § 14-415.1(a) (2007) (emphasis added). The use of "any firearm" in North Carolina's statute is ambiguous in that it could be construed as referring to a single firearm or multiple firearms. If construed as any single firearm, the statute would allow for multiple convictions for possession if multiple firearms were possessed, even if they were possessed simultaneously. Alternatively, if construed as any group of firearms, the statute would allow for only one conviction where multiple firearms were possessed simultaneously. Thus, under this statute it is unclear whether a defendant may be convicted for each firearm he possesses if he possesses multiple firearms simultaneously. The issue of how to construe North Carolina's Felony Firearms Act when a felon possessed multiple firearms simultaneously is one of first impression for North Carolina. Accordingly, it is helpful in our own analysis to look to interpretation of the federal felony firearms statute.

Under federal law, it is unlawful for any member of a disqualified class, such as a felon, "to . . . possess . . . any firearm or ammunition." 18 U.S.C. § 922(g) (2000). This statute, much like North Carolina's statute, is ambiguous as to whether "any" is singular or plural. The Fourth Circuit has held that "[t]hrough a literal construction of the statute, [the Fourth Circuit] could conclude that when 'any' is used in context of the singular noun 'firearm,' 'any' means a single firearm." *United States v. Dunford*, 148 F.3d 385, 389 (4th Cir. 1998). A conviction for possession of any firearm by a felon could arguably then occur every time a felon picks up a firearm "even though it is the same firearm or every time that person picks up a different firearm." *Id.* "The [United States] Supreme Court has cautioned, however, that the question of what constitutes the allowable unit of prosecution 'cannot be answered merely by a literal reading' of the statute." *Id.* at 390 (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221, 97 L. Ed. 260, 264 (1952)). The United States Supreme Court holds that ambiguity in the statute should be resolved in favor of lenity, and doubt must be resolved against turning a single transac-

tion into multiple offenses. *See Bell v. United States*, 349 U.S. 81, 83-84, 99 L. Ed. 905, 910-11 (1955).

The Fourth Circuit has previously held that six firearms and ammunition seized from a defendant's home, all at the same time, supported only one conviction under 18 U.S.C. § 922(g). *See Dunford*, 148 F.3d at 390. "In so holding, we join the majority of circuits which have reached a similar conclusion." *Id.*; *see, e.g., United States v. Keen*, 104 F.3d 1111, 1119-20 (9th Cir. 1996) (holding that Congress did not intend to authorize multiple convictions or punishments for a simultaneous act of possession under 18 U.S.C. § 922(g)); *United States v. Hutching*, 75 F.3d 1453, 1459 (10th Cir. 1996) (holding "[t]he simultaneous possession of multiple firearms generally 'constitutes only . . . one offense' unless there is evidence that the weapons were stored in different places or acquired at different times") (citation omitted), *cert. denied*, 517 U.S. 1246, 135 L. Ed. 2d 193 (1996); *United States v. Berry*, 977 F.2d 915, 917 (5th Cir. 1992) (holding that convictions and sentences for the same criminal act of multiple firearms possessed simultaneously violates the double jeopardy clause); *United States v. Grinkiewicz*, 873 F.2d 253, 255 (11th Cir. 1989) (holding that the possession of several different firearms housed in closely proximate areas at the same time is but one violation).

This interpretation of the word "any" is further supported by the case law of our state. In the context of other crimes, such as the possession of controlled substances, we have held that the possession of several items constituted a single act of possession where those items were possessed simultaneously. *See, e.g. State v. Rozier*, 69 N.C. App. 38, 54, 316 S.E.2d 893, 904 (1984) (reasoning that the circumstances of each case will determine whether separate possession offenses may properly be charged. If separate vials of cocaine had been found on defendants' persons at the same time, only one offense could be charged); *State v. Smith*, 99 N.C. App. 67, 74, 392 S.E.2d 642, 647 (1990) (holding that possession of separate containers of cocaine in two locations within one bedroom constituted one act of possession).

Likewise, we note that our case law favors the imposition of a single punishment unless otherwise clearly provided by statute. "In construing a criminal statute, the presumption is against multiple punishments in the absence of a contrary legislative intent." *State v. Boykin*, 78 N.C. App. 572, 576-77, 337 S.E.2d 678, 681 (1985). The rule of lenity "forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention." *Id.* at 577, 337 S.E.2d at 681.

Furthermore, the imposition of a single punishment for illegally possessing multiple firearms is consistent with the punishment we impose for other crimes, such as larceny, in North Carolina. Specifically, N.C. Gen. Stat. § 14-72(b)(4) states that the larceny "[o]f any firearm" is a felony. N.C. Gen. Stat. § 14-72(b)(4) (2007). In regard to larceny, this Court has held that the Legislature, by enacting N.C. Gen. Stat. § 14-72(b)(4) with the language of "any," did not intend to create a separate unit of prosecution for each firearm stolen nor to allow multiple punishments for the theft of multiple firearms. *See Boykin*, 78 N.C. App. at 575-76, 337 S.E.2d at 681.

In the instant case, a review of the applicable firearms statute shows no indication that the North Carolina Legislature intended for N.C. Gen. Stat. § 14-415.1(a) to impose multiple penalties for a defendant's simultaneous possession of multiple firearms. Here, defendant was not only convicted twice for possession of a firearm by a felon but was also sentenced twice, evidenced by File Numbers 06CRS053058 and 06CRS053059. The two firearms, both entered into evidence, originated out of the same act of possession. The firearms were possessed simultaneously because as defendant ran from the vehicle they were both on his person, either in his clothing or inside the black plastic bag he removed from the vehicle. Upon review, we hold that defendant should be convicted and sentenced only once for possession of a firearm by a felon based on his simultaneous possession of both firearms. Therefore, we find error with the trial court's decision to enter two convictions against defendant for possession of a firearm by a felon and to sentence defendant twice based on these convictions. We uphold the trial court's first conviction for possession of a firearm by a felon (06CRS053058) but reverse the second conviction (06CRS053059). Accordingly, we remand for re-sentencing the consolidated sentence of possession of a firearm by a felon and possession of marijuana with intent to sell or distribute.

III.

[3] Defendant further argues that the trial court erred by arresting his judgment for assault with a deadly weapon with intent to kill, due to double jeopardy concerns, rather than his judgment for attempted first-degree murder. Specifically, defendant claims the decision to arrest judgment on the less serious conviction was arbitrary and was an abuse of discretion. We determine there was no error.

Here, the State moved the trial court to arrest judgment on the conviction of assault with a deadly weapon with intent to kill. This

motion was granted, but because defense counsel did not object to the motion at the time, the issue was not preserved for appellate review. *See* N.C. R. App. P. 10(b)(1) (2008). Assuming *arguendo* that defendant's argument was preserved, we review it and determine it is without merit.

"The disposition of a motion for appropriate relief is subject to the sentencing judge's discretion and will not be overturned absent a showing of abuse of discretion." *State v. Haywood*, 144 N.C. App. 223, 236, 550 S.E.2d 38, 46, *appeal dismissed, disc. review denied*, 354 N.C. 72, 553 S.E.2d 206 (2001). Therefore, a trial court's decision to arrest judgment will be reviewed for an abuse of discretion. *Id.* The test for abuse of discretion requires the reviewing court to determine whether a decision " ' "is manifestly unsupported by reason," or "so arbitrary that it could not have been the result of a reasoned decision." ' " *State v. Locklear*, 331 N.C. 239, 248, 415 S.E.2d 726, 732 (1992) (citations omitted).

"In any case, until the expiration of the term the orders and judgments of the court are *in fieri*, and the judge has the power, in his discretion, to make such changes and modifications in them as he may deem wise and appropriate for the administration of justice." *State v. Hill*, 294 N.C. 320, 329, 240 S.E.2d 794, 801 (1978); *see also State v. Abbott*, 320 N.C. 475, 485, 358 S.E.2d 365, 371 (1987) (holding that where there are multiple convictions and the trial court must arrest one judgment to avoid subjecting the defendant to double jeopardy, the decision as to which judgment to arrest is discretionary).

By convicting or punishing a defendant of two offenses that have at least one element not included in the other, a defendant has not been subjected to double jeopardy. *See State v. Tirado*, 358 N.C. 551, 579, 599 S.E.2d 515, 534 (2004), *cert. denied*, 544 U.S. 909, 161 L. Ed. 2d 285 (2005). " '[D]ouble jeopardy does not occur unless the evidence required to support the two convictions is identical.' " *Id.* (quoting *State v. Murray*, 310 N.C. 541, 548, 313 S.E.2d 523, 529 (1984), *overruled on other grounds, State v. White*, 322 N.C. 506, 518, 369 S.E.2d 813, 819 (1988). Because a defendant may be convicted and sentenced for two distinct offenses, a trial court would not need to arrest one of the sentences in order to ensure defendant is not subjected to double jeopardy. *See id.* at 591, 599 S.E.2d at 541-42.

The elements of attempted first-degree murder are: "(1) a specific intent to kill another person unlawfully; (2) an overt act calculated to carry out that intent, going beyond mere preparation; (3) the exist-

ence of malice, premeditation, and deliberation accompanying the act; and (4) a failure to complete the intended killing." *State v. Peoples*, 141 N.C. App. 115, 117, 539 S.E.2d 25, 28 (2000). In contrast, the elements of assault with a deadly weapon with intent to kill are: "(1) an assault; (2) with a deadly weapon; (3) with the intent to kill[.]" *State v. Coria*, 131 N.C. App. 449, 456, 508 S.E.2d 1, 5 (1998); *see also* N.C. Gen. Stat. § 14-32(c) (2007). Thus, "[a]ssault with a deadly weapon with intent to kill requires proof of an element not required for attempted first-degree murder: the use of a deadly weapon. It is not a lesser-included offense of attempted first-degree murder." *State v. Cozart*, 131 N.C. App. 199, 204, 505 S.E.2d 906, 910 (1998); *disc. review denied*, 350 N.C. 311, 534 S.E.2d 600 (1999), *appeal dismissed, cert. denied*, —— N.C. ——, 651 S.E.2d 225 (2007). Furthermore, attempted first-degree murder includes premeditation and deliberation, which are not elements of assault with a deadly weapon with intent to kill.

Here, defendant was found guilty of two offenses, attempted murder and assault with a deadly weapon with intent to kill. While the trial court noted that the two offenses arose out of the same factual basis, they are distinct because they do not have identical elements. Because a trial court may convict and sentence a defendant of both attempted first-degree murder and assault with a deadly weapon with intent to kill without subjecting defendant to double jeopardy, we find that the trial court did not need to arrest either of defendant's convictions. The trial court, however, acted within its discretion in deciding to arrest judgment and in deciding which judgment to arrest. The trial court chose to arrest the less serious offense of assault with a deadly weapon with intent to kill and enter a sentence based on the more serious conviction of attempted murder. Defendant has failed to show the trial court abused its discretion by imposing judgment based on the more serious conviction. Therefore, the trial court did not err by arresting judgment on the lesser conviction of assault.

IV.

[4] Defendant finally argues that the trial court erred by failing to instruct the jury on defendant's availability of perfect or imperfect self-defense, even though no objection was made at trial. We disagree.

When defendant failed to object to the instructions at trial but claims on appeal of improper jury instructions, the instructions are reviewed for plain error. *See State v. Greene*, 351 N.C. 562, 566, 528 S.E.2d 575, 578, *cert. denied*, 531 U.S. 1041, 148 L. Ed. 2d 543 (2000).

The defendant has the heavy burden of showing that the error constituted plain error, "that is, (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997). Furthermore, a defendant is entitled to a new trial "only if the error was so fundamental that, absent the error, the jury probably would have reached a different result." *State v. Jones*, 355 N.C. 117, 125, 558 S.E.2d 97, 103 (2002).

In the case *sub judice*, defendant argues a jury could have found that he acted in self-defense when resisting arrest. According to defendant, because the officers' actions were unlawful, defendant had the right to defend himself. We now address the law that applies to a defendant's actions and the resulting jury instructions.

A trial court is not required to instruct on either perfect or imperfect self-defense with regard to a charge of murder "unless evidence was introduced tending to show that at the time of the killing the defendant reasonably believed" it necessary to kill the victim in order to save himself from imminent death or great bodily harm. *State v. Norman*, 324 N.C. 253, 260, 378 S.E.2d 8, 12 (1989). Where there is evidence tending to show the use of excessive force by the law officer, "the trial court should instruct the jury that the assault by the defendant upon the law officer was justified or excused if the assault was limited to the use of reasonable force by the defendant in defending himself from that excessive force." *State v. Mensch*, 34 N.C. App. 572, 575, 239 S.E.2d 297, 299 (1977), *cert. denied*, 294 N.C. 443, 241 S.E.2d 845 (1978).

"[E]very person has the right to resist an unlawful arrest[]" by using only such force as reasonably appears to be necessary to prevent the unlawful restraint of his liberty. *State v. Mobley*, 240 N.C. 476, 478-79, 83 S.E.2d 100, 102 (1954). Where excessive force is exerted against an officer, however, "the person seeking to avoid arrest may be convicted of assault, or even homicide if death ensues[.]" *Id.* at 479, 83 S.E.2d at 102.

Within reasonable limits, an officer "has discretion to determine the amount of force required under the circumstances as they appeared to him at the time he acted." *Todd v. Creech*, 23 N.C. App. 537, 539, 209 S.E.2d 293, 295, *cert. denied*, 286 N.C. 341, 211 S.E.2d 216 (1974). When there is substantial evidence of unusual force it is

for the jury to decide whether the officer acted arbitrarily or maliciously. *See id.* Furthermore, "[i]t is not incumbent upon the State to prove that the law officer did not use excessive force[.]" *Mensch,* 34 N.C. App. at 575, 239 S.E.2d at 299.

A law enforcement officer is justified in using deadly physical force upon another person when it is or appears to be reasonably necessary

[t]o effect an arrest or to prevent the escape from custody of a person who he reasonably believes is attempting to escape by means of a deadly weapon, or who by his conduct or any other means indicates that he presents an imminent threat of death or serious physical injury to others unless apprehended without delay[.]

N.C. Gen. Stat. § 15A-401(d)(2)(b) (2007).

Here, Officer Fritz testified that he saw defendant with a gun and that defendant began firing at him before Officer Fritz returned fire. Defendant attempted to escape by running away from Officer Fritz. Defendant threatened he would shoot, and Officer Fritz had reason to believe that defendant had weapons on his person or within the bag he carried with him. The trial court could reasonably find that when Officer Fritz fired at defendant, he acted within his discretion given the danger of the circumstances and the risk of great bodily harm if defendant carried out his threat to shoot. Defendant failed to present substantial evidence showing that Officer Fritz acted with unusual force, given the circumstances. The trial court was therefore under no duty to instruct the jury that the assault by defendant upon Officer Fritz was justified or excused because of self-defense. We hold that defendant did not meet his burden and that the jury would not have reached a different result on the attempted murder or assault conviction had it been instructed on self-defense. The trial court's decision not to instruct on perfect or imperfect self-defense was not plain error. For the foregoing reasons, we find no error.

No error in part, reversed and remanded in part.

Judges TYSON and STROUD concur.