IN THE SUPREME COURT OF NORTH CAROLINA

No. 75PA19

Filed 3 April 2020

STATE OF NORTH CAROLINA

v.

ADAM WARREN CONLEY

On discretionary review pursuant to N.C.G.S. § 7A-31 from a unanimous decision of the Court of Appeals, 825 S.E.2d 10 (N.C. Ct. App. 2019), reversing judgments entered on 16 August 2017 by Judge Robert T. Sumner in Superior Court, Macon County, and remanding for resentencing. Heard in the Supreme Court on 8 January 2020.

> *Joshua H. Stein, Attorney General, by John R. Green Jr., Special Deputy Attorney General, for the State-appellant.*
>
> *Glenn Gerding, Appellate Defender, by Emily Holmes Davis, Assistant Appellate Defender, for defendant-appellee.*

DAVIS, Justice.

Subsection 14-269.2(b) of the North Carolina General Statutes prohibits the possession of firearms on school property. In the present case, defendant Adam Warren Conley was convicted and sentenced on five separate counts for violation of the statute based on an incident in which he was discovered on the grounds of a school in possession of five guns. Based on our determination that N.C.G.S. § 14-269.2(b) is

ambiguous as to whether multiple convictions are permitted for the simultaneous possession of more than one firearm on a single occasion, we conclude that—under the rule of lenity—defendant could only lawfully be convicted on one count. Accordingly, we affirm the decision of the Court of Appeals.

**Factual and Procedural Background**

On 4 June 2015, a couple who lived on Union School Road in Macon County called the police after hearing several gunshots around 4:40 a.m. and observing two unknown persons walking in their front yard. At approximately 5:15 a.m., Alice Bradley, a school bus driver, was conducting a morning safety check at nearby South Macon Elementary School when she noticed two individuals in the parking lot. The two individuals were later identified as defendant and Kathryn Jeter.

Bradley testified that as she was getting into her car, defendant held up a silver firearm and pointed it at her. The two individuals then began running toward her car. In response, Bradley drove her vehicle in their direction and swerved around them. Defendant and Jeter began walking toward an athletic field behind the school building. When she returned to her bus to radio for help, Bradley noticed that a black bag had been placed on the front seat of the bus.

Deputy Audrey Parrish of the Macon County Sheriff's Office responded to the initial call and began to search for defendant and Jeter on the school grounds. She located the two individuals walking near a fence by an athletic field behind the school and noticed that they were approaching the school building. Deputy Parrish

identified herself as a law enforcement officer and ordered defendant and Jeter to stop walking and turn around. Defendant turned toward Deputy Parrish, raised the silver pistol, and pointed it at her. Deputy Parrish heard defendant pull the trigger, but the gun did not fire. At that point, she fled to her car.

Additional law enforcement officers arrived around 5:30 a.m. After a struggle, during which officers had to employ a Taser three times, defendant was taken into custody. As he was being detained, officers observed a silver handgun fall from defendant's waistband to the ground. Officers recovered several other firearms and knives from defendant's person. Ultimately, four firearms and two hunting knives were recovered at the scene. During a subsequent search of the school grounds, law enforcement officers discovered that the black bag that had been placed on Bradley's school bus belonged to defendant and contained an additional .22 caliber pistol.

On 29 June 2015, defendant was indicted by the Macon County grand jury on eleven charges: attempted murder, discharge of a firearm on educational property, assault by pointing a gun, cruelty to animals, possession of a knife on educational property, possession of a firearm in violation of a domestic violence protective order, and five counts of possession of a firearm on educational property.

Defendant was convicted by a jury of one count of attempted first-degree murder, five counts of possession of a gun on educational property, one count of possession of a knife on educational property, one count of cruelty to animals, and one count of assault by pointing a gun. Defendant was sentenced to three consecutive

terms of imprisonment: (1) 170 to 216 months for the attempted first-degree murder conviction; (2) a consolidated term of six to seventeen months for three convictions of possession of a firearm on educational property; and (3) a consolidated term of six to seventeen months, suspended for 24 months of probation, for all remaining convictions. Defendant filed an untimely notice of appeal on 31 August 2017. On 27 March 2018, he filed a petition for writ of certiorari with the Court of Appeals, requesting that the court review his convictions despite the fact that his notice of appeal was not timely filed. The Court of Appeals allowed his petition on 19 February 2019.

Before the Court of Appeals, defendant argued, *inter alia*, that the trial court erred by entering judgment on five separate counts of possession of a firearm on educational property, contending that N.C.G.S. § 14-269.2(b) did not clearly authorize the court to enter judgment on multiple counts for the simultaneous possession of more than one firearm. In a unanimous decision, the Court of Appeals held that N.C.G.S. § 14-269.2(b) "is ambiguous as to whether multiple punishments for the simultaneous possession of multiple firearms is authorized." *State v. Conley*, 825 S.E.2d 10, 15 (N.C. Ct. App. 2019). Applying the rule of lenity, the Court of Appeals determined that the statute should be construed as permitting only a single conviction. *Id.* at 14–15. For that reason, the Court of Appeals reversed the judgments and remanded the case to the trial court for resentencing. *Id.* at 15.

The State filed a petition for discretionary review with this Court on 25 March

2019. We allowed the petition on 14 August 2019.

## Analysis

The sole issue before us is whether a defendant can lawfully be convicted of more than one count of possession of a firearm on educational property based on his simultaneous possession of multiple firearms.[1] Subsection 14-269.2(b) of the General Statutes provides as follows:

> It shall be a Class I felony for any person knowingly to possess or carry, whether openly or concealed, *any* gun, rifle, pistol, or other firearm of any kind on educational property or to a curricular or extracurricular activity sponsored by a school.

N.C.G.S. § 14-269.2(b) (2019) (emphasis added). The crux of the dispute in this appeal centers around the use of the phrase "any gun" in the statute—namely, whether the statute's prohibition of possessing or carrying "any gun" on educational property means that separate punishments may be imposed for each gun possessed on a specific occasion or, alternatively, that only a single punishment may be imposed, regardless of the number of guns possessed.

This Court has not previously had occasion to determine this precise issue. The Court of Appeals, however, addressed a similar issue in *State v. Garris*, 191 N.C. App. 276, 663 S.E.2d 340 (2008), which was relied on by the Court of Appeals in reaching its result in the present case.

---

[1] Defendant has not challenged the validity of his remaining convictions.

In *Garris*, the defendant was convicted of two counts of possession of a firearm by a felon after two firearms were simultaneously found on his person. *Id.* at 285, 663 S.E.2d at 348. The relevant statute provided that it was unlawful for any felon to possess "any firearm or any weapon of mass death and destruction." N.C.G.S. § 14-415.1(a) (2007). The Court of Appeals determined that the legislature's use of the phrase "any firearm" was ambiguous because "it could be construed as referring to a single firearm or multiple firearms." *Garris*, 191 N.C. App. at 283, 663 S.E.2d at 346. Thus, the court explained that it was "unclear whether a defendant may be convicted for each firearm he possesses if he possesses multiple firearms simultaneously." *Id.* Noting that "[t]he rule of lenity 'forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention[,]' " *id.* at 284, 663 S.E.2d at 347 (quoting *State v. Boykin*, 78 N.C. App. 572, 577, 337 S.E.2d 678, 681 (1985)), the court in *Garris* concluded that the defendant could be "sentenced only once for possession of a firearm by a felon based on his simultaneous possession of both firearms." *Garris*, 191 N.C. App. at 285, 663 S.E.2d at 348.

In the present case, based upon our thorough review of the language of N.C.G.S. § 14-269.2(b) and guided by our prior case law, we conclude that the result reached by the Court of Appeals was correct. We believe this conclusion is mandated by our decision in *State v. Smith*, 323 N.C. 439, 373 S.E.2d 435 (1988), in which we engaged in an analogous exercise of statutory interpretation with regard to a statute

structurally similar to the one at issue here.

In *Smith*, the defendant, a bookstore clerk, was arrested for selling two obscene magazines and one obscene film to an undercover officer. *Id.* at 440, 373 S.E.2d at 436. The defendant was convicted of three separate violations of N.C.G.S. § 14-190.1(a), which made it unlawful to "sell, deliver or provide any obscene writing, picture, record or other representation or embodiment of the obscene." *Id.* at 440–41, 373 S.E.2d at 436 (quoting N.C.G.S. § 14-190.1(a)(1) (1986)). The defendant argued that he could not lawfully be punished for three separate counts of the offense because the statute was ambiguous as to "the allowable unit of prosecution" when multiple obscene items are sold in a single transaction. *Id.* at 441, 373 S.E.2d at 437.

This Court agreed with the defendant's argument, reasoning that because the statute made "no differentiation of offenses based upon the quantity of the obscene items disseminated," an ambiguity existed as to whether the legislature intended to punish a defendant for the dissemination of "each obscene item" or, instead, "intended that a single penalty attach to the unlawful conduct of disseminating obscenity." *Id.* at 441, 373 S.E.2d at 436. Due to the statute's failure to clearly express the General Assembly's intent as to the allowable unit of prosecution, we determined that this ambiguity should be resolved in favor of lenity toward the defendant. *Id.* at 441, 373 S.E.2d at 437.

In so holding, we cited with approval the rule articulated by the United States Supreme Court providing that "if Congress does not fix the punishment for a federal

offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." *Id.* at 442, 373 S.E.2d at 437 (quoting *Bell v. United States*, 349 U.S. 81, 83–84, 99 L. Ed. 905, 910–11 (1955)). We further stated that our result was "in accord with the general rule in North Carolina that statutes creating criminal offenses must be strictly construed against the State." *Smith*, 323 N.C. at 444, 373 S.E.2d at 438. Accordingly, because the defendant sold the three prohibited items in a single transaction, we concluded that "a single sale in contravention of G.S. § 14-190.1 does not spawn multiple indictments" and, therefore, the defendant could be convicted of only one count of violating the statute. *Id.*

Although the facts in *Smith* are distinguishable from those of the present case and the convictions there arose under a different statute than the one presently before us, we are nevertheless compelled to apply the same legal principles that we applied in *Smith* in interpreting N.C.G.S. § 14-269.2(b). Because it is clear that N.C.G.S. § 14-269.2(b) shares a parallel structure with the statute at issue in *Smith*, our rationale for applying the rule of lenity in that case applies equally here.

The statute in *Smith* prohibited the dissemination of "*any* obscene writing, picture, record or other representation or embodiment of the obscene." *Smith*, 323 N.C. at 440–41, 373 S.E.2d at 436 (emphasis added) (quoting N.C.G.S. § 14-190.1). Subsection 14-269.2(b) prohibits the possession of "*any* gun, rifle, pistol, or other firearm" on educational property. N.C.G.S. § 14-269.2(b) (emphasis added). Thus, the statutes at issue in both cases contain the word "any" followed by a list of singular

nouns in order to enumerate the prohibited items. In both statutes, this grammatical structure could reasonably be construed as referring *either* to a single item or to multiple items.[2] Accordingly, we similarly conclude that the statutory language here is ambiguous as to "the allowable unit of prosecution." *Smith*, 323 N.C. at 441, 373 S.E.2d at 437. Thus, defendant can be convicted of only one violation of N.C.G.S. § 14-269.2(b).

While the State attempts to explain why *Smith* should not control on these facts, we find the State's arguments to be unpersuasive. The State first contends that the legislature's use of the word "any" in N.C.G.S. § 14-269.2(b) is merely intended to encompass the numerous *types* of firearms in existence—making clear that a person cannot possess a firearm on educational property regardless of whether the firearm is a pistol, rifle, shotgun, machine gun, or other type of gun. But the same argument could have been made in *Smith*—that is, the argument that the term "any" in the statutory phrase "any obscene writing, picture, record or other representation or embodiment of the obscene" was intended to cover all obscene materials regardless of

---

[2] As the Supreme Court of Alabama has noted, in order to discern the legislature's intent as to the intended unit of prosecution, courts often focus on whether a statute uses the word "any" or the words "a" or "another" to describe the prohibited item. *McKinney v. State*, 511 So. 2d 220, 224–25 (Ala. 1987) (citation omitted). The court elaborated on this point as follows: "How, then, should the unit of prosecution be described so that an intent to allow multiple convictions is clear and unequivocal? Instead of using the word 'any' to describe the unit of prosecution, the singular words 'a' or 'another' should be used." *Id*. at 224 (citation omitted).

the form they took.

Moreover, the State's argument is further refuted by the fact that the phrase "or other firearm of any kind" in N.C.G.S. § 14-269.2(b) already conveys the meaning that all types of firearms are encompassed by the statute. Therefore, under the State's argument, the General Assembly's use of either the word "any" or the phrase "or other firearm of any kind" would be merely an act of redundancy. It is a well-established rule of statutory construction that a statute "must be considered as a whole and construed, if possible, so that none of its provisions shall be rendered useless or redundant. It is presumed that the legislature . . . did not intend any provision to be mere surplusage." *Porsh Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981) (citations omitted).

Second, the State contends that *Smith* is distinguishable from this case because the statute at issue there dealt with the dissemination, as opposed to the possession, of the enumerated items. However, the fact that N.C.G.S. § 14-190.1(a)(1) concerned the dissemination—rather than the possession—of prohibited items is a distinction without a difference. Our ruling in *Smith* was predicated on the ambiguity of the language contained in the above-referenced portion of the statute rather than on any substantive distinction between the act of disseminating and the act of possessing. An act of possession, like an act of dissemination, may involve either one or multiple items. Just as the obscenity statute in *Smith* "ma[de] no differentiation of offenses based upon the quantity of the obscene items disseminated," *Smith*, 323

-10-

N.C. at 441, 373 S.E.2d at 436, subsection 14-269.2(b) likewise makes no differentiation of offenses based on the quantity of firearms possessed.

Third, the State asserts that unlike the relatively modest increase in the amount of harm caused by the dissemination of each additional obscene item in *Smith*, defendant's possession of each additional firearm on school property represents a separate and discrete potential for violence. The State argues that the General Assembly could not have intended that a person who brings five firearms onto school property would receive no greater punishment than an individual who brings only one.

We disagree. Indeed, the question of whether to impose one or multiple punishments under N.C.G.S. § 14-269.2(b) in this context is a quintessential example of a policy decision reserved for a legislative body. Our recognition of the serious danger resulting from the presence of guns on school property does not allow us to usurp the General Assembly's authority to make such policy decisions. *See Rhyne v. K-Mart Corp.,* 358 N.C. 160, 169, 594 S.E.2d 1, 8 (2004) ("The General Assembly is the 'policy-making agency' because it is a far more appropriate forum than the courts for implementing policy-based changes to our laws."). Once such a policy decision has been made by the General Assembly and codified by statute, it is the duty of the courts to give meaning to the legislature's clearly stated intent. However, we are unable to discern such an unambiguous expression of intent based on our reading of N.C.G.S. § 14-269.2(b) in its present form.

The dissent asserts that N.C.G.S. § 14-269.2(b) is a unique statute because it transforms what might otherwise be a lawful act—the possession of a firearm—into an unlawful one based solely upon the location where the possession occurs. The dissent takes this as proof that the legislature intended for possession of a gun on school property to generate a heightened degree of concern, thereby rendering this statute deserving of special treatment. The dissent also believes that this location-focused nature of the criminal prohibition on firearms on school property makes N.C.G.S. § 14-269.2(b) distinguishable from the statutes at issue in *Smith* and *Garris*, given that the statutes in those two cases merely imposed generalized bans on possession or dissemination of certain items that applied in any location.

However, the dissent does not explain *why* the location-based nature of the criminal prohibition in N.C.G.S. § 14-269.2(b) renders it materially distinguishable from the obscenity statute at issue in *Smith* for purposes of the rule of lenity's applicability. It is certainly true that the two statutes might have different aims, each seeking to address a distinct type of criminal conduct. But this does not change the key fact that both statutes share the same core ambiguity in that neither one clearly indicates the intended allowable unit of prosecution.

Statutory language is either ambiguous or it is not. Moreover, language that is ambiguous in one statute does not magically shed its ambiguity when used in a second statute just because the evil sought to be addressed in the latter law is deemed to be of greater public concern than that addressed by the former one. We are not

permitted to disregard the rule of lenity simply because its application in a particular case may be perceived as inconvenient.

The dissent contends that our analysis neglects the spirit of the law and what it believes was the likely result that the legislature sought to accomplish. But the dissent's subjective belief as to the legislature's intent does not change the fact that there are two reasonable constructions of N.C.G.S. § 14-269.2(b) with regard to the intended allowable unit of prosecution. As a result, this is precisely the type of scenario for which the rule of lenity exists. The statutory language at issue in N.C.G.S. § 14-269.2(b) is ambiguous for the very same reason that the analogous language in the obscenity statute in *Smith* was held to be ambiguous by this Court. Unless we were to overrule *Smith*—a result that the dissent does not advocate— adherence to our prior decision mandates that we reach the same result here.

*Smith* stands for the proposition that a statute possessing this same type of structure—i.e., employing the word "any" followed by a list of singular nouns to enumerate the prohibited items—is ambiguous as to the allowable unit of prosecution. Accordingly, we are bound by *Smith* to conclude that this ambiguity triggers the rule of lenity in the present case, and we decline to take the dissent up on its invitation to engage in what would be an act of pure judicial speculation in guessing which interpretation the legislature actually intended.

It is important to emphasize that the General Assembly is, of course, free to amend the language of N.C.G.S. § 14-269.2(b) at any time to allow for multiple

punishments when an individual simultaneously possesses more than one firearm on educational property. But any such amendment must unambiguously state a legislative intent to accomplish this result. Given the existing ambiguity in N.C.G.S. § 14-269.2(b), we are required by our prior decision in *Smith* to invoke the rule of lenity and to hold that defendant may be convicted of only a single violation of this statute.[3]

## Conclusion

For the reasons stated above, we affirm the decision of the Court of Appeals.

AFFIRMED.

---

[3] We note that our decision today is consistent with several cases from other jurisdictions similarly holding that multiple punishments are not permitted for a single instance of unlawful possession in violation of a statute that uses the term "any" to describe the items to be prohibited. *See, e.g., United States v. Dunford*, 148 F.3d 385, 390 (4th Cir. 1998) (construing a federal statute prohibiting the possession of "any firearm" by a felon to mean that the defendant's "possession of [ ] six firearms and ammunition, seized at the same time from his house, supports only one conviction"); *State v. Watts*, 462 So. 2d 813, 814–15 (Fla. 1985) (holding that a Florida statute prohibiting inmates from possessing "[a]ny firearm or weapon" on prison grounds permitted a defendant who possessed two knives to be convicted of only one count of the offense).

Justice MORGAN dissenting.

I respectfully dissent from my esteemed colleagues in the majority who, in my view, have mistakenly considered our decision in *State v. Smith*, 323 N.C. 439, 373 S.E.2d 435 (1988) to be controlling authority in the present case. As a result, I am of the opinion that the majority has ignored the presence of clear legislative intent in subsection 14-269.2(b) of the North Carolina General Statutes, misapplied the rule of lenity, and, consequently, reached the unfortunate conclusion that a person who violates the statute by carrying multiple firearms on educational property is subject to only a single conviction for such criminal activity. In my view, such a person presents a significant threat to the sanctity of educational property which is so abhorrent in its potentiality that the imposition of multiple punishments for the offense should be available as warranted. Although the majority finds ambiguity in the plain language of N.C.G.S. § 14-269.2(b), which would inure to the benefit of its violator regarding the administration of punishment for an offense under this law, I would instead hold that N.C.G.S. § 14-269.2(b) permits multiple convictions to be entered against defendant under the facts of this case, wherein defendant carried several firearms on his person and carried a separate firearm that was placed on a school bus. Therefore, I would reverse the decision of the Court of Appeals and reinstate the judgment of the trial court.

"Legislative intent controls the meaning of a statute." *Brown v. Flowe*, 349 N.C.

520, 522, 507 S.E.2d 894, 895 (1998) (citation omitted). "To determine legislative intent, a court must analyze the statute as a whole, considering the chosen words themselves, the spirit of the act, and the objectives the statute seeks to accomplish." *Id*. As this Court explained in *State v. Earnhardt*,

> [w]here [a statute] is clearly worded, so that it is free from ambiguity, the letter of it is not to be disregarded in favor of a mere presumption as to what policy was intended to be declared . . . *But where it admits of more than one construction, or is doubtful of meaning, uncertain, or ambiguous, it is not to be construed only by its exact language, but by its apparent general purpose; that meaning being adopted which will best serve to execute the design and purpose of the act.*

170 N.C. 725, 86 S.E.2d 960, 961 (1915) (emphasis added) (citations omitted). While it is true that a statute creating a criminal offense "must be strictly construed against the State[,]" *Smith*, 323 N.C. at 444, 373 S.E.2d at 438, "[t]he statute . . . should be construed sensibly, and, in order to make sure of the true intent, the meaning of [the] words or phrases may be extended or narrowed or additional terms implied, or it may be presumed that the [l]egislature intended exceptions to its language, where this is necessary to be done in order to enforce the evident purpose" of the statute. *Earnhardt*, 170 N.C. at 725, 86 S.E.2d at 961. Moreover, "if a literal interpretation of a word or phrase's plain meaning [in a statute] will lead to absurd results, or contravene the manifest purpose of the legislature, as otherwise expressed, *the reason and the purpose of the law shall control.*" *State v. Rankin*, 371 N.C. 885, 889, 821 S.E.2d 787, 792 (2018) (emphasis added).

N.C.G.S. § 14-269.2(b) reads, in pertinent part: "It shall be a Class I felony for any person knowingly to possess or carry, whether openly or concealed, *any gun,* rifle, pistol, *or other firearm* of any kind on educational property." N.C.G.S. § 14-269.2(b) (2015) (emphasis added). The only element of N.C.G.S. § 14-269.2(b) that would render unlawful an otherwise lawful ability to possess or carry any gun or other firearm is the inability to legally possess or carry it on educational property. Hence, it is clear that the legislature intended that the presence of any gun or other firearm on educational property generate a heightened degree of concern in comparison to a more generalized type of item, and generate a heightened degree of treatment in comparison to a more generalized type of place where a gun or other firearm is possessed or carried. The obvious legislative intent of this focused statutory enactment is to prevent violence in the schools located in North Carolina. An increase in the number of firearms possessed or carried by a person on educational property begets an increase in the dangers faced by those who learn, teach, administrate, work, or are otherwise found in the facilities of these academic institutions or upon their grounds. In its brief, the State's depiction of each firearm possessed or carried on educational property as "a separate, discrete instrument of death" which affords a potential shooter with the means to minimize a need to reload a firearm or the requisite time to replenish its ammunition is a grim observation of the realities of the existence of N.C.G.S. § 14-269.2(b) and the properness of an interpretation of the statute to allow the prospect of multiple convictions for a violation of the law.

The majority, however, finds ambiguity in the phrase "any gun" as utilized in N.C.G.S. §14-269.2(b) and resolves this ambiguity in favor of lenity toward defendant, concluding that the statute does not authorize the entry of multiple convictions for the simultaneous possession of multiple guns on educational property. My esteemed colleagues of the majority believe that this conclusion is mandated by our decision in *Smith*, a case in which this Court determined that the rule of lenity prevented a defendant from receiving multiple convictions for the dissemination of multiple items of obscenity in one single sales transaction. *See Smith*, 323 N.C. at 440, 373 S.E.2d at 436. In construing N.C.G.S. § 14-190.1, which established that it is unlawful to disseminate "*any* obscene writing, picture, record or other representation or embodiment of the obscene," we found the principle espoused by the United States Supreme Court in *Bell v. United States,* 349 U.S. 81, 99 L. Ed. 2d 905 (1955) to be persuasive. The principle states that "when the legislature does not clearly express legislative intent, . . . any ambiguity should be resolved in favor of lenity." *Smith*, 323 N.C. at 441, 373 S.E.2d at 437 (citing *Bell*, 349 U.S. at 81, 99 L. Ed. 23 at 905). However, despite the specific strictures of N.C.G.S. § 14-269.2(b), the majority in the instant case nonetheless likens this statute to N.C.G.S. § 14-190.1—the dissemination of obscenity statute addressed in *Smith*—to apply the rule of lenity, due to statutory ambiguity in the absence of an express legislative intent. But in *Smith*, the subject matter of the statute concerned obscenity outlawed generally from being disseminated; here, the subject matter of the statute concerns firearms

outlawed specifically from being on educational property. In *Smith*, there was no identifiable purpose to punish more severely the dissemination of individual items of obscenity than the dissemination of a group of items of obscenity as to the commission of one offense, because the harm to society was still quantitatively the same; on the other hand, there is an identifiable purpose to punish more severely the act of possessing or carrying individual firearms than a group of firearms as to the commission of one offense, due to the significant threat of danger to human life which is quantitatively increased by the presence of multiple firearms.

The majority also cites the Court of Appeals decision in *State v. Garris,* 191 N.C. App. 276, 663 S.E.2d 340 (2008) as helpful guidance in this case of first impression in our Court. In *Garris*, the lower appellate court determined that the language of N.C.G.S. § 14-415.1, which makes it unlawful for a person who has been convicted of a felony "to . . . have in his custody, care, or control any *firearm . . . ,*" was ambiguous as to whether "the statute would allow for multiple convictions for possession if multiple firearms were possessed, even if they were possessed simultaneously." *Smith*, 323 N.C. at 283, 663 S.E.2d at 346 (quoting N.C.G.S. §§ 14-288.8(c), 14-415.1(a) (2007)). The Court of Appeals held that, under the Court's reasoning in *Bell,* the ambiguity should be resolved in favor of lenity so as to allow the defendant felon in *Garris* to be convicted and sentenced only once for possession of a firearm by a felon based upon his simultaneous possession of multiple firearms

"in the absence of a contrary legislative intent." *Id.* at 284, 663 S.E.2d at 347 (citation omitted). The majority analogizes N.C.G.S. § 14-415.1(a) to N.C.G.S. § 14-269.2(b) and hence applies the rule of lenity, due to statutory ambiguity in the absence of contrary legislative intent. But in *Garris*, the subject matter of the statute had application to a firearm possessed by a felon anywhere; here, the subject matter of the statute has application to a firearm carried or possessed specifically on educational property by anyone. Although the majority in the present case cites *Garris* primarily to support its premise that there is an appellate court consistency in these two case outcomes, I submit that the dominant consistency lies in the majority's automatic association of a criminal statute's provision beginning with the term "any" with the majority's propensity to invoke the rule of lenity in such circumstances, which is compounded in the instant case by the majority's express view that there is no evident expression of legislative intent to authorize multiple punishments for multiple firearms being possessed or carried on educational property in violation of N.C.G.S. § 14-269.2(b).

In stretching the tight confines of the present case in order to capture the generalities afforded by N.C.G.S. § 14-190.1 as construed in *Smith* and N.C.G.S. § 14-415.1 as interpreted in *Garris*, the majority conveniently ignores the clear legislative intent that undergirds N.C.G.S. § 14-269.2(b). It also unduly inflates the similarities between and among the legal authorities upon which it relies in order to rationalize

its determination that these cited statutes and cases constitute binding precedent, thus misappropriating the rule of lenity. In relying primarily and heavily upon the doctrine, the majority fails to comport with the guidance provided by the United States Supreme Court in *Callanan v. United States*, 364 U.S. 587, 815 S. Ct. 321, 5 L.Ed. 2d 312 (1961) regarding the correct application of the rule of lenity: "The rule [of lenity] comes into operation at the end of the process of construing what [the legislative body] has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers. That is not the function of the judiciary." *Id*. at 596, 815 S. Ct. at 326.

The majority notes that "N.C.G.S. § 14-269.2(b) shares a parallel structure to the statute at issue in *Smith*" and is "a structurally similar statute." In its analyses of both *Smith* and *Garris*, which the majority has chosen to serve as precedent for its determination of the instant case, along with the corresponding statutes featured in those appellate cases, it appears that the majority has become so lulled by, and enthralled with, the rhythmic cadence of the structurally similar provisions of N.C.G.S. § 14-190.1—"*any* obscene writing . . . ."—and N.C.G.S. § 14-415.1—"*any* firearm"—that the language of N.C.G.S. § 14-269.2(b)—"*any* gun"—is hypnotically viewed through the same lens, even though N.C.G.S. § 14-269.2(b) is more grounded in a specific narrow statutory enactment with clearer legislative intent than the other

statutes, which I opine should obviate any perceived statutory ambiguity and eliminate any need to invoke the rule of lenity.

Just as the majority looks to the *Garris* decision of the Court of Appeals to support its determination, I am likewise inclined to cite an opinion, *In re Cowley*, 120 N.C. App. 274, 461 S.E.2d 804 (1995), from our distinguished colleagues of the lower appellate court. In determining in *In re Cowley* that a gun possessed on educational property did not have to be operable in order to violate the "any gun" provision of N.C.G.S. § 14-269.2(b), the Court of Appeals recognized that the General Assembly had already fashioned the statute in such a manner that the court was obliged to take note that "the focus of the statute is the increased necessity for safety in our schools." *Id*. at 276, 461 S.E.2d at 806. In expressly distinguishing N.C.G.S. § 14-269.2(b) from other criminal offense statutes pertaining to firearms such as the offense of possession of a firearm by a felon embodied in N.C.G.S. § 14-415.1(a) and the offense of armed robbery found in N.C.G.S. § 14-87, the unanimous panel of the Court of Appeals in *In re Cowley* expressly noted:

> "Public policy favors that [N.C.G.S.] § 14-269.2(b) be treated differently from the other firearm statutes. The other statutes are concerned with the increased risk of endangerment, while the purpose of [N.C.G.S.] § 14-269.2(b) is to deter students and others from bringing any type of gun onto school grounds."

*Id*. at 276, 461, S.E.2d at 806.

The majority's pervasive holding that the Court of Appeals is correct in the current case that N.C.G.S. § 14-269.2(b) "should be construed as only permitting a single conviction" is an unfortunate construction of this statute which was clearly intended by the legislature to protect a community of individuals with inherently minimal defenses in the educational setting. In determining that in any and all circumstances, a criminal defendant can only be convicted by the trial court of a single offense under N.C.G.S. § 14-269.2(b)—regardless of the number of guns, rifles, pistols, or other firearms which are knowingly carried on educational property or to a curricular or extracurricular activity sponsored by a school—the majority has prospectively limited a statutory violation involving multiple firearms in a school setting to merely one firearm conviction for scenarios about the likes of which I shall not speculate. Even here, defendant's placement of a firearm in a black bag, found on a school bus at an elementary school in the early morning hours of a school day, in addition to the multiple firearms that were found on his person, is sufficient to give pause, in my view, to the ramifications of this case's outcome, especially as it impacts the deterrent effects of N.C.G.S. § 14-269.2(b).

In holding that N.C.G.S. § 14-269.2(b) does not allow for the prospect of multiple convictions for the simultaneous possession of multiple guns on educational property, I am of the opinion that this Court's majority has made a determination that contravenes the statute's manifest purpose and defies the legislature's clear

intent to protect a vulnerable population from potential school shootings. In doing so, I respectfully consider the majority to have neglected to analyze N.C.G.S. § 14-269.2(b) as a whole in order to consider the chosen words, the spirit of the law, and the objectives that the statute seeks to accomplish.

For the reasons given, I respectfully dissent.

Justice NEWBY joins in this dissenting opinion.